121 205
136 364
136 367

## APPEAL OF WILLIAM MIFFLIN.
### [WILLIAM MIFFLIN v. JAMES MIFFLIN, ET AL.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued March 21, 1888—Decided October 1, 1888.

1. If, by the terms of a deed of trust, the life tenant of realty have a general power of appointment by will, with full power also to convey in fee or by mortgage during his lifetime, then, though the power to sell or mortgage be not exercised, a testamentary appointment, which would have infringed the rule against perpetuities if read into the original trust deed, will not for that reason be adjudged invalid.
2. The power to sell or mortgage, even though unexercised, renders the

life estate destructible, which element affects the power of appointment by will, in view of the rule against perpetuities, the same as though the life tenant's estate were an estate in fee: Smith's App., 88 Pa. 492, distinguished.

3. Real estate was conveyed in trust for a married daughter, for life, and at her death in trust for such estates and to such persons as she should by will appoint, with full power in her to sell or mortgage at any time during her life. The daughter did not sell or mortgage, but died leaving children, one of whom was born after the execution of the trust deed, and by her will she devised the property in trust for the separate use of her children, with power of appointment in each child by will, and with limitations over in default of its exercise:

*Held*, that as the estate was destructible by the life tenant in her lifetime, the provisions of her will did not infringe the rule against perpetuities.

Before GORDON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY and PAXSON, JJ., absent.

No. 154 January Term 1888, Sup. Ct.; court below, No. 27 September Term 1885, C. P. No. 4, in Equity.

On October 22, 1885, William Mifflin filed a bill in equity against James Mifflin, substituted trustee under the will of Sarah L. Mifflin, J. Sergeant Price, trustee under the will of James L. Mifflin, Theresa W. Mifflin, James Mifflin, Dorothea T. Frohock, widow, formerly Mifflin, and Thomas Mifflin, for a partition real estate and an account. Answers having been filed, and issue, the cause was referred to *Mr. George Tucker Bispham*, as examiner and master.

The report of the master, as filed finally on June 9, 1887, so far as relevant to the questions in this case, showed that on June 9, 1813, John Large, of Philadelphia, by deed poll duly acknowledged and recorded, declared that he stood seized of certain real estate therein described in trust for his sister, Sarah L. Mifflin, wife of Thomas Mifflin:

IN TRUST for the sole and separate use of her, the said Sarah Mifflin, during all the term of her natural life, notwithstanding her present or any future coverture, free from the intermeddling or control of her said husband or any future husband, which the said Sarah may have, and to be in nowise liable to his debts or engagements, and, from and immediately after the decease of her, the said Sarah Mifflin, IN TRUST for such uses, intents and purposes, and for such estate and estates as she, the said Sarah Mifflin, by her last will and testament, or any writing purporting to be her last will and testament, shall order, direct and appoint, and for want

## Statement of Facts.

or in default of such direction, order and appointment, then IN TRUST for the use of all and every the child or children, which she the said Sarah may leave to survive her, in equal shares as tenants in common in fee, and the lawful issue of any such child or children of her, the said Sarah, that may then be deceased, such issue of any deceased child or children to take only such part or share thereof, as his, her, or their parent would have done, had he, she or they been living at the time of the decease of the said Sarah Mifflin.

PROVIDED ALWAYS NEVERTHELESS, that, if the said Sarah Mifflin shall at any time during her natural life choose to sell and dispose of the same premises with the appurtenances, and by any writing under her hand order and direct the same to be absolutely sold and disposed of in fee simple and so converted into personal estate for her use, then IN TRUST to sell and dispose of the same absolutely in fee simple to any person or persons either at public or private sale for the best price or prices that can be obtained therefor, and by proper deed or deeds, conveyances or assurances in the law, to be duly executed, acknowledged and perfected, to grant, bargain, sell and convey all the said above described premises with the appurtenances to the purchaser or purchasers thereof, his, her or their heirs and assigns forever, free from all trusts, limitations and restrictions whatsoever; and, in case she, the said Sarah, shall at any time during her natural life choose or direct in manner aforesaid to raise or borrow any sum or sums of money on the same premises, then IN TRUST by indenture of mortgage to grant and convey in mortgage the same premises with the appurtenances for securing the payment of any such sum or sums of money that may be borrowed for the use of her, the said Sarah. . . . . .

On March 19, 1816, Dorothy Large, widow, of Philadelphia, by indenture duly acknowledged and recorded, conveyed certain premises therein described, to Phoebe Morris:

Upon this special trust and confidence, nevertheless, that she, the said Phoebe Morris and her heirs do and shall, at all times during the natural life of Sarah Mifflin, the wife of Thomas Mifflin, of the city of Philadelphia, merchant, permit and suffer her, the said Sarah Mifflin, to use, occupy, possess and enjoy the said premises and to receive and take the rents, issues and profits thereof to and for her own sole and separate use and disposal, notwithstanding her coverture, and without being in anywise subject and liable to the debts, management, power and control of her present husband, or any husband she may hereafter take, . . . . . and from and immediately after the decease of her, the said Sarah Mifflin, then to and for such person or persons, and for such uses and estates, as she, the said Sarah Mifflin, notwithstanding her coverture, by any deed or writing under her hand and seal, attested by two or more credible subscribing witnesses, or by her last will and testament or by any writing purporting to be her last will and testament, to be signed and attested as aforesaid, shall or may direct, limit or appoint, and, in default of such direction, limitation or appointment, then to the use of all the children of her, the said

Statement of Facts.

Sarah Mifflin, by her husband, the said Thomas Mifflin, that shall be living at the time of the decease of her, the said Sarah Mifflin, their heirs and assigns, in equal parts as tenants in common, and not as joint tenants, and, for want of any such child or children, then to the use of the right heirs of her, the said Sarah Mifflin, forever: provided always nevertheless that it shall and may be lawful to and for the said Sarah Mifflin, notwithstanding her coverture, and whether she be covert or sole, to mortgage the aforesaid premises for securing the repayment of any moneys to be borrowed by her with interest for the same, and to contract and agree with any person or persons for the sale and purchase of the premises and by deed or deeds of conveyance to grant and convey the same to the purchaser or purchasers thereof in fee simple; and the moneys, so to be borrowed, or arising from the sale of the premises, to receive, appropriate and apply in such way and manner as she may see fit: and to and for no other use, intent or purpose whatsoever.

Sarah L. Mifflin became a widow and afterwards, on December 7, 1856, died, testate, leaving to survive her the following children born on the dates given: James L., June 26, 1800; Mary, December 26, 1804; Martha, November 7, 1807; Thomas, March 5, 1811; Phoebe M., March 12, 1814; John L., January 23, 1817; William (the complainant), January 22, 1820. The provisions of Mrs. Mifflin's will, dated June 23, 1855, so far as material to the questions raised, were as follows:

All the rest and residue of the property and estate to me belonging or subject to my appointment I devise and appoint unto my brothers, John Large and James Large, their heirs and assigns, IN TRUST for the sole and separate use of my children, James L. Mifflin, Thomas Mifflin, John L. Mifflin, William Mifflin, Mary Mifflin, Martha Mifflin and Phoebe Morris Mifflin, to receive and pay over to them or to permit and suffer them to take, receive and enjoy, each an equal seventh part of the rents, issues, interest and profits thereof, for and during their respective lives, but without liability to the debts or engagements of them, my said children or any of them; and upon the further TRUST on the decease of my said children respectively, if leaving any children or child or the issue thereof to survive him or her, to grant, assign and convey his or her proportionate share of the said residuary property and estate to and among the children or child or the issue thereof, of my said children, if but one solely, if more than one, equally share and share alike, the issue of deceased children of my said children to take equally the share or shares his or her parent would have taken if living, in fee simple; but, if any one or more of my children shall die without leaving any child him or her surviving, then upon the further TRUST to receive and pay over the rents and income of such share or shares of such decedent or decedents to and equally among my surviving children or the issue of them deceased leaving issue, share and share alike, such issue taking the share if more than one, equally,

if but one, solely, which their parent or parents would have taken if living, such accruing shares to be regarded in all respects as part of their original shares, both as to the enjoyment and transmissions thereof; provided, that each of my children shall have power to limit and appoint by will in writing, to take effect after death, the rents and income of his or her share to any surviving widow or husband he or she may leave, to receive and enjoy the same until the death or marriage of such widow or husband, whichever may first happen; and provided that, as respects any of my children who may leave issue at his or her death, upon the further Trust to assign, grant and convey his or her share of said property and estate to and among his or her child, children or issue, as he or she may limit and appoint by writing in the nature of a last will and testament, whether in fee simple or for any other estate, upon trusts or otherwise; and, upon default of any such will or appointment, upon the further Trust, after the decease of any of my children who shall leave issue to survive him or her, to hold the shares of any such issue who may be born during my lifetime upon the like trusts and with the same powers, as the shares hereinbefore devised or appointed in trust for my own children: provided, that it shall be lawful for any of my grandchildren or more remote issue, so born within my lifetime, to dispose of his or her share of said property and estate absolutely, and in fee simple, to whomsoever it may please him or her to give and devise the same; and provided, if any one of my children be the last survivor of my family without leaving any issue of any of my children him or her surviving, then upon the further Trust to assign and convey all the said trust estate and property, as he or she shall, by last will and testament, direct, limit and appoint, in fee simple or for any less estate.

All the children of said Sarah L. Mifflin, except the complainant, having died before the filing of the bill, their interests in the real estate embraced in said deeds had so passed by will and descent that, if the questions raised were decided in favor of the complainant, he would be entitled to a partition of the real estate and a division of the income fund between himself and the respondents, the beneficiaries under the will of James L. Mifflin, deceased, in the proportion of five sixths to the complainant, and one sixth to the said beneficiaries.

The master, in his conclusions of law, found that the determination of the general question depended upon the answers to be given to three questions:

1. Did the limitations by way of remainder, in the deeds or either of them, give Mrs. Mifflin a fee under the Rule in Shelley's Case?

Considering the deeds separately in their limitations, and discussing or citing Melsheimer v. Gross, 58 Pa. 412; Sheets'

Est., 52 Pa. 268; Guthrie's App., 37 Pa. 23; Stewart v. Keno-wer, 7 W. & S. 288; Physick's App., 50 Pa. 128, the master was of opinion that Mrs. Mifflin took but a life estate in the premises described in the deeds referred to.

2. Did the existence of the powers in said deeds, or either of them, enable her to dispose of the fee in the same way as if she had a seisin in fee?

The master, citing or discussing 2 Chitty's Bl. Com., 108; 4 Kent, Com., 319; Second Ref. P. Church v. Disbrow, 52 Pa. 223; Ege v. Medlar, 82 Pa. 101; Lancaster v. Dolan, 1 R. 248; Drusadow v. Wilde, 63 Pa. 170, examined the contention. of the respondents, that while the existence of the powers con-ferred might not absolutely vest a fee, yet that it gave to their possessor such attributes of ownership over the estate that she might be considered as enabled to make all dispositions there-of which could be made by the owner of the fee; and he was of the opinion that the question was ruled by Smith's App., 88 Pa. 492; and, studying that case and Sugden on Powers, Law Lib. ed., 495*; Lewis on Perp., 83*, 84*, 482*; Gray on Perp., § 524; Gray v. Hammersley, 3 Sim. 513; Barford v. Street, 16 Ves. 135; Irwin v. Farrer, 19 Ves. 86; Reith v. Seymour, 4 Russ. 263; Scott v. Joslyn, 26 Beav. 174; Hughes v. Wells, 9 Hare 749; Birdsall v. Richards, 18 Pa. 256; Dod-son v. Ball, 60 Pa. 492, he did not find that there was any au-thority which justified him in holding that an unexercised power of appointment could be of any avail in supporting the dispositions made in Mrs. Mifflin's will; it seemed to the mas-ter that she did not have an estate in fee simple, and that the mere fact that she was the donee of certain powers of appoint-ment during her life, which she did not exercise, would not prevent the appointment, under the powers which she did ex-ercise, from being read into the original instrument under the rule.

3. Were the limitations in Mrs. Mifflin's will good, as ap-pointments under her powers?

The master held:

" The answer to this question is to be found in Smith's Ap-peal, 88 Pa. 492, already cited. It being conceded or demon-strated that the provisions of Mrs. Mifflin's will are to be inter-preted as if read into Exhibits A and B, the conclusion follows

that by those deeds it was attempted to do what the rule against perpetuities forbids, viz., to limit an estate for the life of a person not in being. The case now under consideration is, indeed, a stronger case than Smith's Appeal. In Smith's Appeal the rule against perpetuities was held to have been violated, because the dispositions of the will then in question *might* have resulted in limiting an estate for a life not in being; here they actually *did* so result. William Mifflin, the complainant, was not born until between six and seven years after the deed of 1813 was executed. Reading the provisions of his mother's will into that deed, and the instrument will be a declaration by John Large (the trustee) that he is seized in fee of certain real estate in trust for Mrs. Mifflin for life, with remainder to her son, William Mifflin (born six years after the date of the deed), for life, with remainder to his children in fee, but with a power of appointment given to him to limit, by his will, the estates of his children upon the same trusts as those declared in his mother's will in respect to himself.

" To state the substance of this deed with the language of Mrs. Mifflin's will incorporated in it, is to demonstrate that this case is upon this question ruled by Smith's Appeal. I therefore think that the limitations in Mrs. Mifflin's will, so far as they relate to property included in deeds A and B, are invalid, inasmuch as they cause those instruments to offend against the rule forbidding perpetuities. Mrs. Mifflin, therefore, is to be considered as having died without exercising her power of appointing by will, so far as these properties are concerned; and her children, therefore, took remainders in fee which were not directed by her will, but which passed by their wills, if any, or if none, under the intestate laws. The trustee under her will, I suppose, took the dry legal estate by virtue of her devise to him, but he was seized thereof, as the trusts declared by her were invalid as to said properties, under the evidence in this cause, as to one sixth in trust for the defendant J. Sergeant Price, as trustee under the will of James L. Mifflin, deceased, and as to five sixths in trust for the complainant."

Considering next the question whether the rights of the plaintiff had been affected by lapse of time, or by any family settlement, in the light of the facts in evidence as governed

by the principles of cases discussed: Burkholder's App., 105
Pa. 37; Wilen's App., 105 Pa. 124; Follmer's App., 37 Pa.
121; Hagerty v. Albright, 52 Pa. 274; Downes v. Bullock,
25 Beav. 54, affirmed in 9 H. of L. 1, the master concluded by
recommending an interlocutory decree that the complainant
was entitled to the five sixth interest in the premises de-
scribed in the two assurances; that a partition of said real
estate be had and the share of the complainant set off to him
in severalty; that an account should be had between the par-
ties, and that the plaintiff should be entitled to be recouped
out of the trust fund the over-payments made to the defend-
ants for the six years last past, by reason of the mistake in
paying to them one half instead of one sixth of the rents,
issues and profits and income of said premises.

It was alleged in various exceptions filed by the defendants
that the foregoing report of the master was erroneous, for the
reasons, inter alias:

1. Because the master erred in reporting in respect to the
premises described in deed marked Exhibit A, and appended to
this exceptant's answer, that the same were not affected or
controlled by the will of Sarah L. Mifflin, deceased, and that
in respect to the same premises her will infringed upon the
rule against perpetuities.[2]

2. Because the master has erred in reporting in respect to
the premises described in deed marked Exhibit B, and append-
ed to this exceptant's answer, that the same were not affected
or controlled by the will of Sarah L. Mifflin, deceased, and that
in respect to the same premises her will infringed upon the
rule against perpetuities.[3]

3. Because the master has erred in awarding partition of the
two parcels of realty referred to in the foregoing two excep-
tions, or either of them, in the manner and form contained in
his report.[4]

The said exceptions having been overruled by the master
after due consideration, they were then renewed in court, and
on the argument thereof, the court, HARE, P. J., on Novem-
ber 26, 1887, filed the following opinion and decree.

By deeds dated June 9, 1813, and March 19, 1816, respect-

ively, as annexed to the complainant's bill, Sarah Mifflin took an estate for life in the premises in controversy, with a general power of appointment by deed or will. She devised the land to her children for life, with power to appoint the same by any instrument in the nature of a will, with remainder to their children; and the question is whether such an execution of the power conferred by the deeds is valid in favor of the grandchildren who claim under it, or fails as tending to a perpetuity, because they might have been, as some of them actually were, born after the delivery of the deeds.

Agreeably to the view taken by Mr. Gray, a perpetuity is an estate or interest which, from its indestructibility and incapacity for alienation, if the law tolerated it, might be transmitted indefinitely, under the authority conferred by the original donor, without power on the part of the holders to treat it absolutely as their own, or blend it with the mass of property which each successive owner may dispose of as he thinks proper: Gray on Perpetuities, §§ 140, 141, 526. Such also substantially is the definition given by Chief Justice GIBSON, in Hillyard v. Miller, 10 Pa. 334, and adopted in Smith's Appeal, 88 Pa. 495.

Reasoning from these premises we are led to a conclusion favorable to the defendants. In whatever words an estate is conferred, and although it be only for life, it cannot, agreeably to the above view, be a perpetuity, if the holder is clothed with power that will enable him to set aside the limitations imposed by the original grantor and confer an absolute interest on himself or on another person. Such a tenant is, so far as he himself is concerned, and in every essential particular, as much an owner as if he had the fee, and the property would descend at his death to his heirs. He can at any moment loose the bonds by which it is fettered and render it as available for the purposes of life and business as if there were no settlement. It is not therefore surprising that the English courts should have held that when property is settled on A. for life, with power to will and convey, he may make any disposition of it which would be valid if he were absolutely the owner; and, in determining whether the limitations which he creates contravene the rule against perpetuities, the computation will date from the period when the power is exercised,

and not from the execution of the instrument by which the power was conferred. The rule came to us from England, and was formulated there by judges who, from Taltarum's Case to the present day, have shown themselves indisposed to tolerate any scheme of settlement which would unduly extend the authority of an owner beyond the grave, and enable him to subject future generations to his caprice or wishes. We should not, therefore, deviate from the path which the English courts have marked out, unless some decision in this state points in a different direction.

Smith's Appeal, above cited, is said to be such a case. The testator, Lewis Ryan, there devised his property in trust for the sole and separate use of his daughters for life, and immediately on the death of any of them, to pay over the principal sum to such person or persons as such daughter might direct by any instrument of writing in the nature of a last will and testament. One of the testator's daughters, Mrs. Smith, died some years afterwards, and her will gave all the residue of her estate, including that which she was authorized to appoint under her father's will, in trust for her sons and daughters for life, and upon their deaths to assign the same to such person or persons for such estates as they should appoint by will. The question was, whether this execution of the power was valid.

It seems to have been taken for granted, both by court and counsel, that the interest conferred by Ryan's will was indestructible and would therefore be a perpetuity, if it could be prolonged, under the authority conferred by him, beyond a life or lives in being at his death, and twenty-one years afterwards. The test consequently was to write the clause of Mrs. Smith's will when executed, into the will of Lewis Ryan, when it would clearly be bad, as including children born after his death.

This conclusion would seem to be sound from whatever point of view it may be regarded. The power conferred on Mrs. Smith was to be exercised by an instrument which could not take effect until after her death, and did not take the case out of the rule that nothing can be done under a power which could not have been done by the donor. The reason is so clearly stated by Mr. Gray that I will not attempt to put it in other words. "If a man who has a vested limited interest in

property has the present unconditioned right to turn that limited interest into an absolute interest, and thus to acquire the present unconditioned, absolute interest, he is regarded by the rule against perpetuities as already having such interest. A tenant in tail is such. A life tenant, with a general power exercisable by deed is also such a person. To this extent, the rule sacrifices form to substance, but the substance must be there. There must be a person with a vested limited interest, who has the immediate right to become the present absolute owner. Such is not the case when a life tenant has a power which he can exercise only by will. The general rule must govern unless the exception is made out, and the exception is not made out, unless there be a present right to acquire the present absolute interest."

If the above reasoning is correct, and it is not easy to discern a flaw, the life tenant in Smith's Appeal was, and the life tenant in this case was not, within the rule of perpetuities. The deeds under which the testatrix, Sarah Mifflin, acquired the property in dispute, authorized her to agree with any person or persons for the sale and purchase of the premises, and by deed or deeds of conveyance to grant the same to the purchaser or purchasers thereof in fee simple, and the money so derived to apply in such manner as she may see fit. The deed set forth in Exhibit A is to the same effect. Although the power so conferred on Mrs. Mifflin was " to sell and convey," there is, I think, little doubt that she might have executed it by a deed of bargain and sale for a nominal consideration, in trust to reconvey to herself; because she was authorized to apply the purchase money as she saw fit, and whether this was much or little, concerned no one but herself. If this inference is just, she had an immediate right to become the present absolute owner, and even if a trust to reconvey would have been beyond the scope of the power, she could undeniably have vested an absolute interest in the buyer, and so put the property beyond the scope of a rule which only applies where the holder's estate is indestructible. A power to sell, and re-invest the purchase money for the same uses, would stand on a different footing; but that cannot well be a perpetuity which may be converted at any time into a fee simple, and, together with its proceeds, given, sold, or otherwise disposed of, as the

parties interested may desire.  We may therefore infer that
the judgment in Smith's Appeal is consistent with the rule
against perpetuities as therein defined, and the conclusions
drawn by Gray and other writers of like repute, and tends to
sustain rather than condemn the execution of the power now
before us.  If the declaration in Smith's. Appeal that the test
of the execution of a power is to write the word in the instru-
ment through which the power came, had been laid down as
a universal rule, we should have applied it unhesitatingly from
deference to the tribunal by which it was enunciated, but the
language of a court must be taken relatively to the subject-
matter, which in that instance was a perpetuity, while in this
it is a destructible estate.

It seems proper to add, that the master, to whom we are in-
debted for much valuable light, would have reported in favor
of the defendants, had the powers conferred by the deeds of
June, 1813, and March, 1816, been exercised, but he was of
opinion that a destructible estate is within the rule against per-
petuities, unless it is actually destroyed.  In the absence of an
authority directly on the point, it cannot be regarded as settled.
But the view which we have taken seems to be in accordance
with the definition of a perpetuity given in Smith's Appeal,
and the cases there cited.

The exceptions to the master's report, saving the fourth,
fifth, sixth, seventh, eighth and ninth, are sustained, and a
decree will be made to carry out the conclusions at which we
have reached.

A decree having been entered accordingly, the complain-
ant took this appeal, specifying as error, inter alia :

1. The dismissal of the complainant's bill.
2. The sustaining defendants' 1st exception.[2]
3. The sustaining defendants' 2d exception.[3]
4. The sustaining defendants' 3d exception.[4]

*Mr. A. T. Freedley* and *Mr. Wm. Henry Rawle* (with them
*Mr. R. Mason Lyle*), for the appellant:

I. Mrs. Sarah Mifflin died seised of but a life estate.

(a.) The conveyances in trust were expressly for her natu-
ral life, with remainder to her children, and with limitations

over. Under such limitations she had but a life estate and her children took by purchase: Guthrie's App., 37 Pa. 9; Chew's App., 37 Pa. 23; and the ulterior limitations, after the remainder to children, did not enlarge her life estate: Melsheimer v. Gross, 58 Pa. 412; Sheets' Est., 52 Pa. 268. In Stewart v. Kenower, 7 W. & S. 228, the estates united because there were no children; as the court stated, it was an union sub modo.

(*b.*) Mrs. Mifflin had two powers: To direct a sale in her lifetime; to appoint by instrument to take effect after her death: Neither enlarged her express life estate into a fee. When she devised, it was solely by the power of appointment. The distinction is between an express estate for life, with additional powers superadded, and an estate the quantity of which is not defined, and additional powers are added. In the former case the intention is clear, and the superadded powers do not enlarge the previous life estate. When she conveys, it is by the power and not as absolute owner, and the test is, the requisites of the power must be obeyed: Second Ref. P. Church v. Disbrow, 52 Pa. 223; Dodson v. Ball, 60 Pa. 497; Yarnall's App., 70 Pa. 342; Hinkle's App., 116 Pa. 490; 2 Chitty's Bl. Com. 108 n.; Kent's Com., 8th ed., 526; Earp's App., 75 Pa. 119; Ege v. Medlar, 82 Pa. 101. The cases cited by appellees were all cases in which the estate of the first taker was not an express life estate: Lancaster v. Dolan, 1 R. 231; Morris v. Phaler, 1 W. 389; Drusadow v. Wilde, 63 Pa. 170.

II. The limitations by way of appointment in Mrs. Mifflin's will, transgress the rule against perpetuities, and this case is identical with Smith's App., 88 Pa. 492, save that in the present case Mrs. Mifflin possessed powers of sale which she did not exercise.

(*a.*) Upon principle: The will must be written into the deeds creating the power; for, upon questions of remoteness, a power exercisable by an instrument which can only take effect after the donee's death, stands upon the footing of a particular power and not of a general power: Smith's App., 88 Pa. 492; Commonwealth v. Duffield, 12 Pa. 277; Commonwealth v. Williams, 13 Pa. 29; Swaby's App., 14 W. N. 553. The complainant was not born at the creation of the powers, and the limitation over of the ulterior shares to his children

and issue is to the unborn children and unborn grandchildren of a person who was himself unborn at the creation of the power, which is of course invalid: Lewis on Perp., 413; Williams, Real Property, 228; Leaks v. Robison, 2 Mer. 363; Pearks v. Mosely, L. R. 5 App. C. 714; 2 Williams, Executors, 250*, 1250*; Farwell on Powers, §§ 229, 233; Wollaston v. King, L. R. 8 Eq. C. 165.

(*b.*) Upon authority: The case is flatly ruled by Smith's App., 88 Pa. 492; Gardette's Est., 13 W. N. 316. Smith's Appeal is a much weaker case than the present, for there the fact was conceded that all the children were born in the lifetime of the original donor of the power. The court below, however, relied upon a very recent treatise of a living author, Gray on Perpetuities, who reaches his conclusion by denouncing Smith's Appeal as erroneous.

III. The existence of the unexercised powers of sale does not vary the case.

The court below, it is respectfully submitted, fell into the errors: (*a.*) Of totally mistaking the scope of the power of appointment conferred. The power was limited to a will or an instrument to take effect after the donor's death. The powers to be exercised by deed were powers of conveyance in Mrs. Mifflin's lifetime, not powers of appointment. (*b.*) Of relying upon indestructibility as the main definition of a perpetuity, whereas, first, the estate had become indestructible by reason of the non-exercise of the dead powers of sale; and second, the only authority quoted and relied upon, says: "The original meaning of a perpetuity is 'an inalienable, indestructible interest,'" and that author only arrives at his conclusions by disregarding Smith's Appeal: Gray on Perp., §§ 140, 523. (*c.*) Of holding that under the deeds a tenant, like Mrs. Mifflin, " is, so far as he himself is concerned, and in every essential particular, as much an owner as if he had the fee, and his property would descend to his heirs." This is clearly erroneous, and palpably violates the principle referred to, that a general power of sale or appointment given to a life tenant does not enlarge a life tenant's estate: Ante, I (*a.*), (*b.*) The conclusion of the master, that "the mere fact that she was the donee of certain powers which she did not exercise, would not prevent the appointment which she did

exercise from being read into the original instrument," it is submitted, is sustained by the authorities both in England and Pennsylvania: Hughes v. Wells, 9 Hare 749; Scott v. Josselyn, 26 Beav. 174; Reith v. Seymour, 4 Russ. 263; Barford v. Street, 16 Ves. 135; Irwin v. Farrer, 19 Ves. 86; Flinthave's App., 11 S. & R. 24; Commonwealth v. Duffield, 12 Pa. 280; Ege v. Medlar, 82 Pa. 100; Sugden on Powers, 8th ed., 395; Chance on Powers, § 1222; Gray on Perp., § 324; Holmes v. Coghill, 12 Ves. 212; affirming s. c.: 7 Ves. 499; Ex. p. Gilchrist, L. R. 17 Q. B. 521. If not exercised, the power is treated as if it never existed. In fact, an unexercised power is no more property than the power to write a book or paint a picture. It may result in property when exercised, but until then it does not invest the donee with any of the attributes of property.

*Mr. J. B. Townsend* and *Mr. Geo. W. Biddle* for the appellees:

Did the will of Mrs. Mifflin transgress the rule against perpetuities, as to the real estate conveyed by the deeds?

1. All the authorities: Randall on Perp., 48; Sanders on Uses and Trusts, 96; Lewis on Perp., 164; Folwell on Powers, 226, recognize that the object and purpose of the rule are to put a bar upon the grantor or devisor of a settled or devised estate, to prevent his tying it up unreasonably, so as to keep it out of the hands of any beneficiary who can convey a fee. The moment any owner or beneficiary for life has a general power of appointment, either by deed or will, as he or she may please, this, so far as the rule against perpetuities is involved, is equivalent to the ownership in fee by the possessor of such power, for the reason that all future limitations can be destroyed by such beneficiary, and the property is as fully alienable in his or her hands as if he or she were the fee simple owner. "It is the immediate and unrestrained alienability of the property by means of the power, which puts the possessor of such power on the same footing as an owner, in regard to the application of the rule against perpetuities:" Lewis on Perp., 483, 484. "If property is given to A. for life, with power to appoint it by deed or will to whom he pleases, he has the absolute control of it. There is in truth no future interest;

the life tenant can deal with it as if he owned it in fee. Therefore, in the execution of such a power, the remoteness of the appointment under it is to be judged from the point of time of its exercise, and not from the time of its creation: Gray on Perp., § 524, citing Gray v. Hammersley, 3 Sim. 513; s. c. sub nom. Bray v. Bree, 2 Cl. & F. 453, and many other authorities.

2. "If a man who has a vested limited interest in property, has a present unconditioned right to turn that limited interest into an absolute interest, and thus to acquire the present unconditioned absolute interest, he is regarded by the rule against perpetuities as already having such interest:" Gray on Perp., § 526. The appointment made by Mrs. Mifflin in her lifetime, under her powers, to a purchaser from her, or her appointment and direction to her trustee to hold the same to the only proper use and behoof of herself, her heirs and assigns, would, under the statute of uses, carry the title pursuant to her appointment so made in her lifetime, and would have vested such title in the appointee, without even the joinder of the trustee under the deeds: Moore v. Shultz, 13 Pa. 98; Rush v. Lewis, 21 Pa. 72; Lewis on Perp., Law Lib. ed., 488. It is not necessary, nor have we advanced the proposition, that Mrs. Mifflin had the fee simple ownership in the premises at the time of her death. She had a life estate and unrestricted powers of absolute disposition by deed or will at her pleasure; and this we maintain placed her actually in the same status, in applying the rule against perpetuities, as if she were the fee simple owner.

3. The third fallacy of the argument for the appellant is that Smith's Appeal, 88 Pa. 492, rules this case and requires a reversal of the court below. We do not suppose that we can add any force to the careful analysis and consideration which Judge HARE has given in his opinion, of the decision in Smith's Appeal, nor to the clear demonstration that he gives, that it cannot and ought not to rule this case. They are so totally different in their features that the claim made for it by the appellant as ruling the present case ought surely to be rejected. Mrs. Smith, the tenant for life in Smith's Appeal, had a special and limited power only, to wit, a power to appoint by will given to her by the will of her father, Mr. Ryan. She had no power in her lifetime to unfetter and convey away the trust estate.

Mrs. Mifflin had at all times the amplest power to do that very thing. And the law is only concerned to know that the power of free alienation exists, without regarding the quantum of estate vested in the party holding that power.

OPINION, MR. JUSTICE GREEN:

If the element of indestructibility of the estate of the person who, for the time being, is entitled to the property subject to the future limitation, is an essential in the definition of a perpetuity, the decision of the court below is right. In at least two instances, this court has approved a definition which does include that element. Thus in Hillyard v. Miller, 10 Pa. 334, Chief Justice GIBSON said: "A perfect definition of a pepetuity has not been given, and the nearest approach to it is found in Lewis on Perpetuities, ch. 12, where it is said to be a future limitation, whether executory or by way of remainder, and of real or personal property, which is not to vest till after the expiration of, or which will not necessarily vest within, the period prescribed by law for the creation of future estates, and which is not destructible by the person for the time being entitled to the property subject to the future limitation, except with the concurrence of the person interested in the contingent event." The same judge in the same opinion said: "It was the indestructibility not only of springing and shifting cases (uses?) and of executory devises, but also of future trusts, which forced upon the judges the rule against perpetuities, in order to set bounds to the remoteness of not only legal, but equitable limitations; and it acts upon perpetuities wherever they appear, except in conveyances in mortmain or to charitable uses." In Smith's Appeal, 88 Pa. 495, the foregoing extract containing the definition by Lewis was repeated by our Brother PAXSON in the course of the opinion which was delivered by him.

In the definition given by other text writers the same idea is expressed. Gray in his work on the rule against perpetuities, in sections 140 and those which follow, clearly points out that a perpetuity is an indestructible and inalienable interest in its original sense; and, while he shows that it has another or artificial meaning, to wit, that "it is an interest which will not vest till a remote period," yet in all his illustrations he shows that interests which were destructible were not perpetuities.

At § 203' he says: "Thus a future interest, if destructible at the mere pleasure of the present owner of the property is not regarded as an interest at all, and the rule does not concern itself with it. For instance, limitations after an estate tail are never too remote; the present tenant in tail can destroy them all at any moment by docking the entail." Again, at § 443' he says: "A future estate which at all times until it vests is in the control of the owner of the preceding estate, is, for every purpose of conveyancing, a present estate, and is therefore not obnoxious to the rule against perpetuities." Under the head of Powers, at § 477 he says: "A power given to the unborn child of a living person is too remote; that is, if it is a power to be exercised by will only, or a special power to be exercised by deed. But if such unborn child has a general power to appoint by deed, he has the absolute control exactly as if he had the fee, since he can at once appoint to himself. Such general power to appoint by deed is therefore not obnoxious to the rule against perpetuities;" citing Bray v. Hammersley, 3 Sim. 513. Again, at § 524: "If property is given to A. for life with power to appoint it by deed or will to whom he pleases, he has the absolute control over it. There is in truth no future interest; the life tenant can deal with the property as if he owned it in fee. Therefore, in the execution of such a power, the remoteness of an appointment under it is to be judged from the point of time of its exercise, and not from the time of its creation;" citing a number of authorities.

Mr. Lewis in his work on Perpetuities, on p. 483 says, "The great aim of the law against remoteness is secured in the immediate and unrestrained alienability of the property by means of the power." Farwell on Powers, p. 226, says, "The rules against perpetuities apply to instruments executing powers, as well as to other instruments; but there is an important distinction between general and particular powers in this respect. The donee of a general power is virtually the absolute owner of the property on which his power extends, and he is regarded as absolute owner for the purpose of considering the application of the rule against perpetuities to him." In Gray's work at section 526 b the author says: "And if a man who has a vested limited interest in property has the present unconditioned right to turn that limited interest into an

absolute interest, and thus to acquire the present uncondi-
tioned absolute interest, he is regarded by the rule against per-
petuities as already having such interest. A tenant in tail is
such a person; a life tenant with a general power exercisable
by deed is also such a person. To this extent the rule sacri-
fices form to substance, but the substance must be there.
There must be a person with a vested limited interest who has
the immediate right to become the present absolute owner.
Such is not the case when a life tenant has a power which he
can exercise only by will. The general rule must govern un-
less the exception is made out, and the exception is not made
out unless there be a present right to acquire the present ab-
solute interest."

In Lewis on Perpetuities, at page 484, the author speaking
of general powers says: "Of this kind is a limitation of prop-
erty to such uses or upon such trusts as A. shall appoint, and
subject to any appointment to A. in fee, or to B. in fee, or to
any other person or succession of persons for life, in tail, in
fee or otherwise. In such cases, as the power is so general
and absolute as to be equivalent, for the purposes of alienation,
to the ownership in fee simple, an appointment under it, so far
as concerns the proper period for the vesting of the interests
thereby conferred, rests on the same footing with an original
conveyance. Nor is there any greater tendency to a perpetu-
ity in a general power of appointment over property, and the
possibility of the exercise of such power in opposition to the
laws of remoteness, than in a simple absolute right of owner-
ship. The general power authorizes as complete and as im-
mediate a disposition of the property as could be effected were
the donee entitled to the fee or absolute interest; and it is of
course clear that such a power may be exercised by the donee
in favor of himself. And, as regards the estate limited in de-
fault of appointment, when not given to the donee of the
power, there can be no necessity to consider how far a perpetu-
ity may be created; because, although that estate may be de-
feated at any time by an exercise of the power, yet the great
aim of the laws against remoteness is secured in the immediate
and unrestrained alienability of the property by means of the
power. It may be true that any alienation of the property
must be merely and simply by virtue of the power, and that

the exercise of such power must take effect by reference to the deed or will creating it, and, so far, a necessity may seem to exist, for restricting the donee to the appointment of interests which would have been good if limited in the original will or settlement; but if the essence of a perpetuity be wanting in the nature of the power, or rather if the scope and spirit of the power be directly adverse to a perpetuity, it seems too much to argue that it will not authorize limitations which might have been created by a person having the absolute dominion, *i. e.*, such limitations as will necessarily vest within lives in being and twenty-one years, computed from the time at which they are raised."

The foregoing views are undoubtedly correct; they are not at all impeached by text writers or decisions. In our opinion they control this case. As a matter of course, if Mrs. Mifflin had actually executed the power of sale and caused the title to be conveyed to herself in fee simple, as she had the plain right to do, the limitations of her will would have to be determined upon their own merits, regarding her as the owner in fee and disregarding the previous state of the title. But so far as the application of the rule against perpetuities is concerned, the situation is precisely the same as if she had executed the power. For the question is, whether the provisions of the original deeds of 1813 and 1816 are inoperative because of the rule against perpetuities. They are, if they create inalienable and indestructible estates, to continue longer than the prohibited period. But the estate of Mrs. Mifflin was neither inalienable nor indestructible. It was destructible by her own act. It was entirely within her power to become the owner in fee simple of the estates granted and to totally defeat any ulterior limitations. It proves nothing to say she did not exercise her power and that therefore the situation is the same as though she never had the power. For certain purposes and in certain cases that, of course, is true. But in considering merely the application of the rule against perpetuities, it is not true, because that rule requires that the estates in question should be indestructible, and an estate which can be destroyed by the person who holds it for the time being is not indestructible.

We do not think it necessary to follow the learned counsel,

on both sides, through the very able and interesting discussions contained in their paper books. We will say, however, that Smith's Appeal, 88 Pa. 492, does not control this case. Mrs. Smith had only a limited power·of appointment by will which, of course, could only operate after her death. She could in no manner acquire the title herself, and her estate was an indestructible one, whereas Mrs. Mifflin's estate was destructible beyond all question. In our opinion the·learned court below was right in the view taken of Mrs. Mifflin's estate and therefore

> The decree is affirmed, and appeal dismissed at the costs of the appellant.