## Miller's Trust

*Leighton P. Stradley* and *Richard K. Stevens,* of *Stradley, Ronon & Stevens,* for petitioners.

*Arthur E. Weil,* guardian and trustee ad litem, p. p.

*William Alexander Hamilton,* substituted trustee, p. p.

CRUMLISH, J., July 15, 1943.—This is a petition by George Laurence Miller and Mary Campbell Miller, his wife, settlors, praying for the revocation of a trust.

The settlors executed on March 15, 1935, a deed of trust to George Miller, father of the husband-settlor, and Francis Chapman, as trustees, in which it was provided, inter alia:

(*a*) That the income should be paid to the settlors jointly or to the survivor of them;

(*b*) That upon the death of the survivor the corpus should be transferred to the trustees named in the will of the said George Miller, to be held by them for the benefit and protection of the children of the settlors, the said trustees being vested with all the powers as to the fund as given by the will of the said George Miller, "but it is not intended that this trust fund shall become a part of or in any way intermingled with the estate of the said George Miller";

(*c*) That upon payment by the trustees to the persons so appointed by the will of George Miller, the trust should cease and determine.

The said George Miller died January 1, 1937, leaving a will in which he devised the residue of his estate in trust as follows:

(Item 9) 1. To pay the net income to the said George Laurence Miller for and during the term of his natural life;

2. If Mary Campbell Miller, wife of George Laurence Miller, survives him, she is to receive income not exceeding $12,000 per annum, as the said George Laurence Miller "shall by his last Will and Testament direct, which sum or portion shall be paid to her so long as she lives and remains the widow of my said son";

3. The balance of the income is to go to the children of testator's son, George Laurence Miller, and to the representatives of any predeceased children, per stirpes;

4. Upon the death of the last surviving lawful child of the said George Laurence Miller living at the time of the death of George Miller, the income is to be paid to all the descendants of the said George Laurence Miller, per stirpes, for the further period of 21 years, or in other words, for 21 years after the death of the last surviving child of the said George Laurence Miller living at the time of the death of the said George Miller; and

5. At the expiration of the said time, the corpus absolutely, per stirpes, shall go to the surviving descendants of George Laurence Miller. In the event of the death of the last of the children of George Laurence Miller living at the time of testator's death without issue or issue of other descendants of George Laurence Miller then surviving, the corpus shall be distributed according to the intestate laws of Pennsylvania as if the testator had died unmarried, intestate, and without issue.

Petitioners aver that:

1. The trust violates the rule against perpetuities.

2. The instruments creating the trust contain numerous errors, mistakes, and inconsistencies which require a revocation of the trust.

3. Petitioners and their children are the only parties in interest.

An answer calling for proof of certain facts and, denying the conclusions of law has been filed by Arthur E. Weil, Esq., guardian ad litem and trustee for unborn and unascertained persons and trustee for John Campbell Miller, son of petitioners, who was a minor at the time of the filing of the petition.

On the issue so joined the matter is now before the chancellor on testimony and stipulations of counsel.

. . .

## Discussion

The facts of this matter present a unique situation. Neither counsel for petitioners nor the trustee ad litem has cited, and the court has been unable to find, a case involving the application of the rule against perpetuities to a deed of trust for the benefit of one or more parties for life, with remainder to the purpose of a third party then living. Cases are numerous where deeds created estates for life with power of appointment to the life tenant, and the law on these cases is pretty well settled in Pennsylvania.

1. In the instant case, petitioners, being possessed as tenants by the entireties of certain personal property, executed a written instrument which provided for the delivery of such personal property to George Miller, father of the husband-settlor, and Francis Chapman, Esq., his attorney, in trust, irrevocably, to pay the net income to the settlors and their survivor, and upon the death of the survivor, to deliver such assets to the executors and trustees under the will of the said George Miller, in further trust, for distribution as to income and principal according to the scheme set up in the said George Miller's will "for the benefit and protection of the children" of the settlors.

2. Although the deed of trust set forth that "the said George Miller has, in his last will, inter alia, provided for the creation of a trust fund which will eventually inure to the benefit of Millers and their children, and as part of the consideration for the making of this agreement, agrees that this provision shall, in the main, remain unchanged", the settlors were not acquainted with the provisions of the will of George Miller regarding "the creation of the trust fund which will eventually inure to the benefit of Millers and their children". Nevertheless, as the settlors were dealing with a benevolent father and counsel in whom they had full confidence, they executed the deed of trust on March 15, 1935.

On January 1, 1937, George Miller died and it was then learned that his last will and testament, executed March 6, 1935, provided, inter alia, that the residue of his estate should be held by his executors and trustees and their successors, in trust:

(*a*) To pay the net income unto the said George Laurence Miller during his lifetime and upon his death;

(*b*) Power of appointment to the said George Laurence Miller to appoint to the said Mary Campbell Miller "such portion of the income of my [testator's] estate not exceeding Twelve thousand Dollars ($12,000.00) per annum, as my [his] said son, George Laurence Miller, shall by his last Will and Testament direct, which sum or portion shall be paid to her so long as she lives and remains the widow of my said son";

(*c*) The balance of income to go to the children of the said George Laurence Miller, per capita, and the issue of deceased children, per stirpes, *"Until the death of the last surviving lawful child of my [testator's] son, George Laurence Miller, living at the time of my [his] death"* (Italics supplied) ; and

(*d*) In further trust, to pay the net income to all the descendants of the said George Laurence Miller, per stirpes, for the further period of 21 years after the death of the "last surviving child of my [testator's] said son, George Laurence Miller."

3. It is quite apparent, and all parties agree, that the deed and the will must be read together in order to ascertain the terms of the trust. However, when this is done, several very interesting and unprecedented questions present themselves. For example, is, as the trustee ad litem contends, the will a destructible instrument? Do the provisions in the deed with regard to the remainder over after the death of the settlors amount to a power of appointment in the father? In the event of the death of the settlors in the lifetime of George Miller, would there have been a resulting trust

in favor of the estates of the settlors, with a springing use on the death of George Miller in favor of the beneficiaries under his will? And other questions arise as to the operative date of the trust. Does the trust commence from the date of the deed as regards the terms thereof and the pertinent provisions in George Miller's will? Or, do the provisions of the deed operate from its date, and the estates created by the father's will become effective on the death of the testator? If the last question is to be answered in the affirmative, then, under all applicable theories of law, the provisions of the trust do not violate the rule against perpetuities. But, if the trust sprang into operation at the date of the deed and without regard to the date of the death of the father, i.e., the effective date of his will, the application of the rule against perpetuities requires very careful and serious consideration.

### *Is the will a destructible instrument?*

The trustee ad litem, relying strongly on Mifflin's Appeal, 121 Pa. 205 (1888), contends that the will of George Miller was a destructible instrument and consequently did not become effective until the date of his death. Mifflin's Appeal held that if a power is given to A to appoint property by deed or will to whom he pleases, with full power also to sell or mortgage during his lifetime, he has the absolute control over it. He can deal with the property as if he owned it in fee. Therefore, in the exercise of such a power, a remoteness of appointment in it is to be judged from the point of time it is exercised, and not from the time of its creation. The appointment can be considered as pertaining to the donee himself and the settlement of his own property. In other words, the life estate of the appointee is destructible and the rule is to be applied as if the appointor had an estate in fee. Cf. Cooper's Estate, 150 Pa. 576 (1892). In Lawrence's Estate, 136 Pa. 354 (1890), the rule is stated thus at page 364:

"As a general rule, whether an appointment made in execution of a power is too remote, depends upon its distance from the creation of the power, and not from its execution: Gray on Perp., §514; Lewis on Perp., 484. The exception is, when the power is general to the donee to appoint to whomsoever he may choose, either by deed or will; in such case, the donee has absolute control as if he had the fee, since he can appoint as well to himself as to any other person; he is practically the owner. In such case, the degree of remoteness is measured from the time of the exercise of the power, and not from the time of its creation: Bray v. Bree, 2 Cl. & F. 453; Sugden on Powers, 394, 683; Lewis on Perp., 483; Gray on Perp., §§477-524; Mifflin's App., 121 Pa. 205."

Applying the theory of a life estate with power of appointment to this case, the immediate inquiry, if Mifflin's Appeal, supra, is to control, is, does the donee have an unlimited power to use or consume? Reference to the deed requires the chancellor to answer this question in the negative. George Miller was limited to creating by his will "a trust fund which will eventually inure to the benefit of Millers [settlors] and their children". Assuming, for the purpose of this discussion, but not deciding, that George Miller could have revoked his will at any time prior to death, as the trustee ad litem contends, he was limited, if he was to exercise the power, to the creation by his will of a trust for the benefit of the settlors and their children. Not only did the parties express this as a consideration for the execution of the deed, as aforesaid, but at the very outset the settlors expressed the purpose of the deed to be to preserve and to keep the corpus of the estate "for their sole benefit and enjoyment during their lives and the life of the survivor of them, free and discharged from liability for debts, *and upon the death of the survivor of them, for the benefit and enjoyment of their children*

*and their children's heirs"*. It, therefore, seems clear to the chancellor, on the analogy of a life estate with power of appointment, that the so-called power is a limited one, and not a power to use for his own benefit or a power to conserve; it is a limited testamentary power of appointment. Consequently, it is not controlled by Mifflin's Appeal, supra.

### Power of appointment

On further application of the analogy of a life estate and power of appointment, the latter is to be considered, as has been stated, as no more than a limited testamentary power of appointment. It was limited to the beneficial interest of the settlors, "their children and their children's heirs". Whether or not George Miller exercised this power is not determined by an application of section 11 of the Wills Act of June 7, 1917, P. L. 403, 20 PS §223. It is, therefore, to be noted that what the father actually did was to appoint not only for the benefit of the settlors and their children but any other children of George Laurence Miller by another wife, and beyond that to the issue of deceased children, more remote descendants, and his own next of kin as if he had died according to the intestate laws of the Commonwealth of Pennsylvania. It would be possible, under certain circumstances, for George Laurence Miller to marry again and to have other children. Such children would come within the class of appointees comprehended by the father's will, yet it is obvious that such possibilities were never contemplated by the settlors. A donee is limited by the power conferred and he cannot, by acts of his own, enlarge such power.

"There is a strictness required in the execution of powers which frequently appears to be harsh; but if once a latitude was allowed, and the direction of the testator as to the appointment was departed from, there

would be no rule to go by; and if an implied or presumed intention, even in hard cases, was permitted, and the broad rule of strict adherence to be broken in upon by a minute inquiry into the circumstances of families, it would be highly mischievous, and render the judge the distributor of favours, instead of deciding on the words of the testator, or his clear and declared intention.": Salter v. Howell, 15 S. & R. 188, 190 (1827) ; Rogers' Estate, 31 Pa. Superior Ct. 620 (1906).

The chancellor, therefore, concludes that if the authority vested in George Miller is to be considered a power it is a limited testamentary power, which has not been validly executed and is therefore void as regards the classification outside the scope of the limitations imposed in the deed. The word "children" contained in the deed of trust was not intended to include grandchildren and more remote descendants of George Laurence Miller, and "children of Miller" was not intended to mean children of George Laurence Miller by any other than his present wife, who is one of the settlors and who was a tenant of the estate owning the trust corpus prior to the execution of the deed. See Collins v. Stork, 16 Phila. 21 (1883) ; II Hunter's Orphans' Court Commonplace Book 766, and cases there cited.

In so concluding, the case of Lehman v. Lehman, 215 Pa. 344 (1906), cited by the learned trustee ad litem, has not been overlooked. In the Lehman case, a widower with six children married a widow with one child and had two children by her. After the marriage, he took out a policy of life insurance payable to "his wife in trust for herself and their children in equal shares . . ." The proceeds were paid to the wife, who shortly thereafter used a part to purchase a home, title to which she took in her own name and which she continued to occupy as a residence until her death. There was no

evidence as to what was done with the balance of the insurance money. A suit to partition this property having been instituted, the matter was referred to a master who concluded that the proceeds of the sale should be awarded to the children of the decedent by his second wife. The court below sustained exceptions and directed that distribution be made equally among all the children of the decedent. The Superior Court, in an opinion by Rice, P. J., affirmed the action of the lower court, and the Supreme Court affirmed, per curiam, on the opinion of President Judge Rice. This case is readily distinguishable from the instant one and not controlling here as regards children of George Laurence Miller by any other wife when we look to the context and the circumstances under which the trust was created. Here the settlors were the owners of the corpus as tenants by the entireties and they sought to benefit themselves, the survivor of them, and *their children*. It is clear to the chancellor that when the settlors used the term "their children", in the light of the context and the circumstances, they intended to benefit only the children of their marriage and not possible children of the husband by a subsequent marriage, *if he should be the survivor*. Further, it is difficult to reach any other conclusion in the instant case when it is taken into consideration that the settlors were the owners of the corpus as tenants by the entireties and that they set forth in the deed, in plain words, that one of the purposes was to benefit themselves, the survivor, and *their children*. The words "their children" were used to designate only children of the settlors.

### Rule against perpetuities

As regards the application of the rule against perpetuities, the chancellor's first problem is to determine the true period from which the remoteness is to be measured. It goes without saying that in case of a deed

the time runs from the date thereof, and in case of a will, from the date of the testator's death. But what is the true period in the instant case where the deed is dated March 15, 1935, and where the deed creates a trust for the benefit of one or more persons for life with remainder to the purpose of a will of a third person then living which was executed March 6, 1935? As already stated, the situation is without a precedent. An examination of the cases dealing with the subject of the determination of the period at which the remoteness commences makes it clear that the intention of the parties, when ascertained, is to be followed by the court. In order to determine this intention, the two instruments will be read and considered together. In the instant case, George Miller's will had been executed and was in existence at the time of the execution of the deed and, although the settlors did not know the contents thereof, they did in a general way believe that George Miller had created in his will a trust for them, their children, and their children's heirs. Evidence of this belief is found not only in the testimony but in the deed itself. It must also be borne in mind that the settlors were dealing with a parent who, despite his paternal, affectionate attitude toward them, was, nevertheless, a successful businessman, shrewd, astute, secretive, and with a mind of his own in dealing with his affairs. (Note for example "Item 2", codicil of December 31, 1935.) The picture was thus: The son and daughter-in-law relied upon the general impression which the father gave to them that he had already set up a trust in his will for them, their children, and their children's children; and the father, who had just recently executed his will, had full knowledge of the contents thereof. Under these circumstances it seems reasonable to the chancellor that the parties intended to incorporate and to make as a part of the deed of trust the terms of the father's will. Having reached

this conclusion, it necessarily follows that the remoteness is to be determined from the date of the deed and not from the date of the father's death. So measured, the limitation or ultimate interest beyond the settlors and their children is void under the rule against perpetuities. George Miller's will provides for distribution of principal 21 years after the death of the last survivor of the children of George Laurence Miller living at the date of the death of George Miller. The settlors might have had a child between the date of the execution of the deed and the date of the death of George Miller. Consequently, all persons who might possibly take were not in being when the deed was executed. It has been repeatedly held that where persons are to take no interest is good, under the rule against perpetuities, unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest. The situation is to be tested by possibility and not by actual conditions: Coggins' Appeal, 124 Pa. 10 (1889).

Accordingly, the chancellor concludes that the life estates of the settlors and the survivor and, upon the death of the survivor, the life estates in their respective children, are valid, but all remaining interests violate the rule against perpetuities and are therefore void. See Jessup's Estate, 17 D. & C. 517 (1932), and II Hunter's Orphans' Court Commonplace Book 1024.

A word or two on the subject of inclusion of possible children hereafter born of the marriage of the petitioners. Although the remainder in favor of descendant beneficiaries below children of the settlors is void because such violates the rule against perpetuities, nevertheless, the limitation to children of George Laurence Miller is valid. The vesting in afterborn children of the settlors, if at all, must be in the lifetime of George Laurence Miller, a life in being at the time of the creation of the trust, and hence would begin within the

period of the rule against perpetuities. See Lawrence's Estate, supra. Furthermore, this conclusion is in harmony with the long- and well-established rule of construction that where there is a doubt the guide of interpretation is equality among children.

This reasoning and conclusion coincides with the doctrine that whether an appointment made in execution of a power is too remote depends upon its distance from the creation of the power and not from its execution: Lawrence's Estate, supra; Cox et al. v. Dickson, 256 Pa. 510 (1917) ; Crolius et al. v. Kramer, 279 Pa. 275 (1924). Consequently, if the analogy of a life estate with power of appointment is again applied, we find the gift made by George Miller must be considered as having been made at the time of the execution of the deed and not at the time of his death.

*Is the petition premature?*

The chancellor in considering the petition has not overlooked the line of cases which hold that, where life estates are validly appointed, it is premature for the court to pass upon the validity of the remainder. See Warren's Estate, 320 Pa. 112 (1936), and cases there cited. The chancellor would have considered the application of this rule at an early stage in the proceeding had it not been for the reason that the Federal Government is claiming both estate and gift taxes under the trust created by the aforesaid deed and will; and a postponement of the determination of the questions involved until the termination of the life estates in the settlors would necessitate tax contributions forthwith to the Federal Government which may not be recoverable at a later date, if improperly paid at this time. In view of this situation, the chancellor feels that the case is an exception to the general rule for which Warren's Estate, supra, is an authority, and that it is within the power of a court of equity to consider the question in-

volved ripe for determination at this time. It would, indeed, be inequitable for a court of equity to avoid the questions involved in the instant case and thus to impose on the parties in interest a hardship from which relief may not be had in the future; or, if such relief is to be had, only at a great expense and inconvenience.

Moreover, the settlors, claiming the trust to be void, are seeking a return of their property.

### Mistakes, inconsistencies, etc.

Petitioners have also asked to have the deed revoked in toto because of so-called "numerous, and manifest errors, mistakes and inconsistencies which are all of such a nature as to require the court to revoke the trust". As has already been pointed out, the deed on its face recites that it is made in consideration of George Miller agreeing to create a trust under his will for the benefit of petitioners and their children. The chancellor finds that this is a valid agreement based upon a proper consideration, benefiting petitioners and their children, as aforesaid, and, accordingly, the contention that errors, etc., necessarily make the trust inoperative in its entirety is dismissed.

Accordingly, we enter the following

### Conclusions of law

1. The irrevocable deed of trust executed by George Laurence Miller and Mary Campbell Miller, his wife, to George Miller and Francis Chapman, dated March 15, 1935, and the will of the said George Miller dated March 6, 1935, should be read together in construing the terms of the trust created by such instruments.

2. The pertinent provisions of the will of George Miller are a part of the deed of trust as fully and effectually as if they had been written into the same, word for word.

3. The operative date of the trust is the date of the deed, March 15, 1935.

4. The provisions of the will of George Miller read in conjunction with the provisions of the deed of trust violate the rule against perpetuities because they provide for distribution of principal 21 years after the death of the last surviving child of the settlors living at the time of the death of the said George Miller who was living when the deed of trust became effective.

5. Limitations under the terms of the trust conditioned on the death of such child not living when the deed of trust was executed are void.

6. The facts are to be tested by possibility and not by actual events.

7. There is a legal possibility of further children being born to the settlors of their marriage.

8. At the expiration of the valid life estate to George Laurence Miller and Mary Campbell Miller, his wife, and the survivor of them, and the life estates in their respective children, George Laurence Miller, Jr., Edward Jessup Hasse Miller, and John Campbell Miller, and in any further child or children born to the settlors jointly, the corpus of the said trust reverts to the settlors, George Laurence Miller and Mary Campbell Miller, his wife, as tenants by the entireties.

This conclusion is effective as of the date of the deed of trust, to wit, March 15, 1935.

### Decree nisi

And now, July 15, 1943, this case having come on to be heard on bill, answer, and proofs and on consideration thereof, it is ordered and decreed:

1. That the interests of the parties in the irrevocable trust executed by George Laurence Miller and Mary Campbell Miller, his wife, on March 15, 1935, are as follows:

(a) Life estate in the settlors as tenants by the entireties;

(b) Life estate in the survivor of them;

(c) Life estates in their children, respectively, George Laurence Miller, Jr., Edward Jessup Hasse Miller, and John Campbell Miller, and in any future child or children born to the settlors jointly;

(d) After the expiration of the life estates in the said children and future children, respectively, the trust corpus shall revert to the settlors as tenants by the entireties;

(e) All remainders are void.

2. The bill in equity is dismissed accordingly.

3. Leave is granted to the guardian ad litem and trustee ad litem to apply for reasonable compensation on final termination of the proceedings.

4. Plaintiffs shall pay the costs of these proceedings.

Prothonotary will enter this decree nisi and give notice thereof to the parties or their counsel and unless exceptions thereto are filed within 10 days either party may present a form of final decree to be entered in the cause.