PER CURIAM, May 27, 1901 :

The conclusion arrived at by the learned judge of the court below was fatal to the plaintiff's contention and justly resulted in a dismissal of the bill. A sufficient condemnation of the plaintiff's claim appears in Leaming et al. v. Wise et al., 73 Pa. 173, and in Avondale Marble Co. v. Wiggins, 12 Pa. Superior Ct. 577.

Judgment affirmed.

---

# Boyd's Estate (No. 1).

*Will—Trust and trustees—Separate use trust—Perpetuities.*

Testator devised and bequeathed to trustees with active duties a moiety of his residuary real and personal estate " in trust to pay the rents, interest and income thereof to my daughter during her natural life for her sole and separate use, support and maintenance and without control of any husband she may take and her receipt to be the only discharge therefor. And after her decease for the use and benefit of such person or persons as my said daughter shall give and devise the same by her will in writing duly executed, and for want of such will then the same to go to her heirs." The daughter subsequently married, and exercised the power of appointment in favor of her son, providing that at the age of twenty-five, her trustees should pay him out of the principal moneys of her residuary estate, the sum of $25,000 for his own use absolutely, and further providing that after paying him the income from the remainder of the residuary estate they should on his death, dispose of the fund as follows :

" And as to said residue of my estate upon the further trust:

" Upon the death of my son leaving surviving him a child or children or issue of a deceased child or children or those or any of them, and a widow also then to hold said residue to and for the use of such of his said child, children, issue of a deceased child or children, and widow as the case may be, in such proportion and in such way and manner as my son by his last will and testament or any writing in the nature thereof shall direct, limit or appoint and in default of such appointment then to hold said residue to the use of such person or persons as would be entitled to the same and in such shares and proportions and for such estate and interest as they would respectively be so entitled, under the laws of Pennsylvania, aforesaid, in case my son died intestate, possessed and the lawful owner of said residue of my estate, and having the absolute dominion thereof."

She further directed that in case the son should die, leaving him surviving no child, children or issue of a deceased child or children, but a widow, one third of the residue should be paid to said widow and two thirds of

the net residue in equal parts, one to her husband absolutely and the other to the children of her deceased brother.

The daughter was unmarried and not in contemplation of marriage at the date of the will. *Held* (1) that the trust for the daughter was an active trust and was not defeated by the fact that the separate use annexed to it failed ; (2) that the daughter took a life estate, and could therefore dispose of the fund only under the power of appointment contained in her father's will ; (3) that the life estate appointed to the son and the gift of $25,000 to him when attaining the age of twenty-five years (if he reached the age of twenty-five years within twenty-one years of his mother's death) did not infringe the rule against perpetuities ; (4) that the appointment to the widow and unborn children of the son was bad, as the appointees by possibility, might not come into being within twenty-one years after the death of the donee ; (5) that the residuary estate, except the portion which passed by valid appointment to the son, passed under the will of the original testator to his daughter's " heirs ; " (6) that as the fund was personalty and as the daughter's husband and son survived her and then died, distribution should be made, one half to the personal representatives of her husband, less collateral inheritance tax, and one half to the personal representatives of the son.

Argued April 3, 1901. Appeal, No. 88, Jan. T., 1901, by Angelina M. Bray, Elizabeth K. Bray and Angeline M. Bray, from decree of O. C. Phila. Co., Oct. T., 1895, No. 37, sustaining exceptions to adjudication in the estate of Mary Bray Boyd, deceased. Before McCollum, C. J., Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Exceptions to adjudication.

From the record it appeared that Daniel Bray died in February, 1855, leaving a will by which he directed in part as follows :

" And the other moiety or half part thereof I give, devise and bequeath to my said friends Stacy B. Barcroft and John H. Campbell and the Survivor of them in trust to pay the rents, Interest and Income thereof to my Daughter Mary Bray during her Natural life for her sole and separate Use, Support and maintenance and without control of any husband she may take and her Receipt to be the only discharge therefor.

" And after her decease for the Use and Benefit of such person or persons as my said Daughter Mary Shall give and devise the Same by her Will in writing duly executed and for want of such Will then the same to go to her heirs : provided however and I do hereby direct the said Trustees when my said

Daughter Mary Shall arrive at the full age of Twenty one years to pay to her Ten thousand Dollars out of her Share absolutely."

The daughter Mary was not at the time of the date of the will married nor in contemplation of marriage. She subsequently married and had one son. She died in 1874 leaving her husband and son to survive her. Her husband died on May 4, 1898, and her son died on February 22, 1900, leaving a widow to whom he bequeathed his entire estate, but no children or issue.

By will Mary Bray Boyd directed as follows:

"19 Item. All the rest, residue and remainder of my estate, real and personal, whatsoever and wheresoever the same may be and it is my intention by this my will to dispose of any estate and property I have the power under the will of my father Daniel Bray, deceased, to dispose of by my last will and testament as well as all my estates and property of every nature and kind whatsoever, I give, devise and bequeath unto the Fidelity Insurance Trust & Safe Deposit Company aforesaid of Philadelphia their successors and assigns In trust however to invest and keep invested and at pleasure call in and reinvest the same in such securities as are now permitted to Trustees by the laws of Pennsylvania (railroad bonds excepted) and to collect and receive the income thereof and after paying all proper taxes, charges, assessments and expenses upon the same or relating thereto to pay out of the net income thereof to my son William Stokes Boyd, Jr., or to his guardian for him:

"First an annual sum not exceeding two thousand dollars at the discretion of his father or of his guardian should his father not be living until he arrives at the age of fifteen years.

"Second when he arrives at the age of fifteen years, and until he is twenty-one years of age, an annual sum not exceeding three thousand dollars at the like discretion of his father or of his guardian should his father not be living in each case to be paid quarterly, and

"Third when he arrives at the age of twenty-one years, then to pay to him the whole of said net income of the residue of my Estate as he may desire or call for the same, during all the term of his natural life, and any accumulations of income before my son shall arrive at the age of twenty-one years shall sink into and become part of said residue of my estate. Provided how-

ever that when my son arrives at the age of twenty-five years he shall be paid by the said trustees from the principal moneys of said residue of my Estate the sum of twenty-five thousand dollars for his own use absolutely. And as to said residue of my estate upon the further trust upon the death of my son leaving surviving him a child or children or issue of a deceased child or children or those or any of them, and a widow also then to hold said residue to and for the use of such of his said child, children, issue of a deceased child or children, and widow as the case may be, in such proportion and in such way and manner as my son by his last will and testament or any writing in the nature thereof shall direct, limit or appoint in default of such appointment then to hold said residue to the use of such person or persons as would be entitled to the same and in such shares and proportions and for such estate and interest as they would respectively be so entitled, under the laws of Pennsylvania aforesaid, in case my son died intestate possessed and the lawful owner of said residue of my estate, and having the absolute dominion thereof.

" But should my son die leaving surviving him no child, children or issue of a deceased child or children, but a widow only then in trust to pay.

" First. One third of said residue of my estate to such widow unless my son should by his last will and testament or writing in the nature thereof direct otherwise, viz : that said one third shall not be paid her and then to hold said one third of said residue as though no provision had been herein made for such widow and as if this clause of my will had not been written."

The auditing judge held that Mary Bray Boyd took a fee under her father's will.

Exceptions to the adjudication were sustained in an opinion by PENROSE, J., which was as follows :

The equitable life estate given to the testatrix by the will of her father did not cease to be equitable merely because the separate use annexed to it failed by reason of the fact that she was not at the time of its execution or of his death married, or contemplating marriage. The legal estate was given to trustees, upon whom the performance of active duties was carefully and minutely enjoined—duties which required the legal

estate to remain in them.   A separate use requires no activity of duty on the part of the trustee, and is created, if the beneficiary is married at the time, by any words showing the intention to exclude marital authority or interference (Scott v. Bryan, 194 Pa. 41) ; but the trust, while unnecessary to accomplish this part of the testator's intention (and he is presumed to know the law on the subject), had a manifest purpose for which it was necessary, viz : the prevention of the coalescence of the life estate with the remainder to heirs.   And here, again, it must be presumed that he knew that the separate use would not be efficacious unless his daughter should be married when the will became operative (Neal's Appeal, 8 Outerb. 214, deciding that the execution of the will was the determining time, could not have been anticipated by him), and protection in that case could only be afforded by preserving the remainder as a distinct estate, not subject to the control of the beneficiary for life.   In construing wills, courts are bound to give effect to every word and provision (ut res magis valeat quam pereat), where no rule or policy of the law is violated, and there is no more right in this case to say that the sole purpose of the father in giving to his daughter an equitable life estate was to create a separate use than there was in the case of the son, for whom, of course, a separate use was impossible, the language employed in each case being practically identical.   Indeed, the necessity for supporting the trust is stronger in case of the daughter than in case of the son, irrespective of the separate use, since in the former it is expressly provided that "her receipt" for the moneys paid by the trustees shall "be the only discharge therefor"—words which, it would seem, create a spendthrift trust for her protection (Stambaugh's Estate, 20 Crumr. 585 ; Winthrop Co. v. Clinton, 196 Pa. 472.   See, also, Vaux v. Parke, 7 W. & S. 19), and this in itself furnishes an unanswerable reason for the separation of the life estate from the remainder :   Rife v. Geyer, 9 P. F. Smith, 393.   In this view of the case it becomes identical with Wolfinger v. Fell, 195 Pa. 12, 14, where the subject is elaborately considered by the present chief justice.   See, also, Hemphill's Estate, 5 Pa. Dist. Rep. 690 ; 180 Pa. 95, and Livezey's Appeal, 10 Outerb. 201.   The precise point was decided in Bacon's Appeal, 7 P. F. Smith, 504, in an opinion by Judge

STRONG, where a trust, with active duties on the part of the trustee, for separate use for life of a daughter, with remainder to her heirs, was held to continue after the death of the daughter's husband (as it would not have done but for such duties, (Steacy v. Rice, 3 Casey, 75 ; Koenig's Appeal, 7 P. F. Smith, 352, also an opinion by Judge STRONG), and the life estate not unite with the remainder to her heirs, the distinction being between a mere dry trust requiring no duties on the part of the trustee after the purpose of the trust has ceased (Yarnall's Appeal, 20 P. F. Smith, 335), and a trust for a purpose which continues : Earp's Appeal, 25 P. F. Smith, 119 ; Ashhurst's Appeal, 27 P. F. Smith, 464. Utile per inutile non vitiatur.

But the plain words of the will are all that is required to show that the creation of the trust for separate use was not the only, or even the main, purpose of the testator. The trustees are directed to pay to the daughter " during her natural life, for her sole and separate use, support and maintenance, and without any control of any husband she may take, and her receipt to be the only discharge therefor." Thus it will be observed the taking of a husband is spoken of hypothetically and contingently as an event which may or may not happen ; any husband she " may " take, i. e., " in case " she should take ; but the payment is to be during the whole of her natural life, and is to be for her " support and maintenance," the only discharge therefor during her whole natural life being " her receipt," whether she " take " a husband or not. This brings the case directly within the ruling in Dunn & Biddle's Appeal, 4 Norris, 94, 98.

Assuming, then, that the daughter had but a life estate, her right of disposition was only such as she had under the power of appointment conferred by the father's will, and to the extent that its exercise transgressed the rule against perpetuities, the principal passed at her death to her " heirs " as purchasers. Her will (which showed her own understanding of the interest given by the father) gave, in execution of the power, the estate to a trustee to pay the income to her son in part during his minority, and the whole when he became of age for life—$25,000 of the principal being given to him absolutely at the age of twenty-five years ; at his death the residue to his children or issue and widow, in such shares as he should appoint

by will, and in default of appointment, to the persons entitled
to his estate under the intestate laws.   But if he should leave
a widow and no issue, then one third to such widow, $1,000 to
the Children's Hospital, $1,000 to the Southern Home for
Friendless Children, one half of the residue to her husband and
one half to the children of her brother designated in the will
in equal shares.

The original testator died February, 1855; the daughter in
January, 1874; her husband, May 4, 1898; and her son, Febru-
ary 22, 1900, leaving a widow, to whom he bequeathed his en-
tire estate, but no children or issue.

The life estate appointed to the son, and also the gift to him
of $25,000 upon attaining the age of twenty-five years —if that
event occurred within twenty-one years of the death of his
mother, the donee of the power (but not otherwise)—do not in-
fringe the rule against perpetuities (Gray on Perp. secs. 232,
523; Lawrence's Estate, 21 Crumr. 364); but the appointment
to the widow and unborn children of the son was clearly bad,
as the appointees, by possibility, might not come into being
within twenty-one years after the death of the donee.   But
are the limitations to persons in being in her lifetime, of ascer-
tained portions of the estate, to be regarded as vested, and thus
saved from the operation of the rule against remoteness?   If
they were given simply in default of the execution of a power
conferred upon the prior taker, they would be regarded as
vested, subject to being divested, and the gift would be valid:
4 Kent, 204, 324; Perry on Trusts, sec. 250.   But where in-
terests are limited, not simply in default of the execution of a
power, but on the failure, also, of a prior contingent estate,
they are contingent.   Thus in a devise to B, who is unmarried,
for life, remainder to his children, but if he dies without chil-
dren, to C (which is precisely this case), both remainders are
contingent, though that to B's children may become vested
when a child is born, subject to open and let in afterborn chil-
dren: Doe v. Perryn, 3 Term Rep. 484; 4 Kent, 205; Woelp-
per's Appeal, 11 Crumr. 562.   In the present case children of
the son, had there been any, could not have taken under the
primary appointment to them, because of the rule against per-
petuities; and yet, if the limitation to persons in being were
good, the latter would take to the exclusion of the son's chil-

dren, which would be a perversion of the will of the donee, and certainly not in accordance with her intentions.

It follows that there was a failure to make a valid appointment, except to the extent of the life estate to the son, and the gift to him of $25,000 (if he reached the age of twenty-five years within twenty-one years of his mother's death), and that as to anything beyond, the estate of the original testator, so far as it is included in the account, passes under his will to the daughter's "heirs." Who are her "heirs?" Her husband and son survived her, and the former, where the subject of the gift is personalty, is included in a limitation to the heirs of the wife: Gibbons v. Fairlamb, 2 Casey, 217; Eby's Appeal, 3 Norris, 241. The distribution should, therefore, subject to the gift of $25,000, if valid, and not already paid—be one half to the personal representatives of the husband, less collateral inheritance tax, and one half to the personal representatives of the son.

### DECREE.

And now, this 18th day of February, 1901, it is ordered, adjudged and decreed that the exceptions filed to the adjudication in above be sustained to the extent indicated in the opinion of the court filed the 2d day of February, 1901, and, in accordance with said opinion, distribution of the fund before the court, subject to the gift of $25,000, if valid and not already paid, should be one half to the personal representatives of the husband, less collateral inheritance tax and one half to the personal representatives of the son.

*Error assigned* was the decree of the court.

*John G. Johnson*, for appellants.—The will of Daniel Bray created no valid trust. His daughter took a fee simple in the moiety of his residuary estate: Tucker's App., 75 Pa. 354; Yarnall's App., 70 Pa. 338; Ogden's App., 70 Pa. 501; Wells v. McCall, 64 Pa. 211; Freyvogle v. Hughes, 56 Pa. 230; Koenig's App., 57 Pa. 352; Dodson v. Ball, 60 Pa. 492; Kuntzleman's Est., 136 Pa. 142; Serfass v. Serfass, 190 Pa. 485; Quin's Est., 144 Pa. 444; Conley's Est., 197 Pa. 291.

Even though Mary Bray Boyd had only a life estate with a power of appointment, her exercise of such power in favor of her husband and of the children of her deceased brother, was

not violative of the law against perpetuities, but was valid: Hopkins v. Jones, 2 Pa. 69; Lawrence's Est., 136 Pa. 354; Johnston's Est., 185 Pa. 179; Coggins's App., 124 Pa. 10.

*Samuel E. Cavin*, with him *David W. Sellers* and *Thomas H. Capp*, for appellee.—The trust created by the will of Daniel Bray for the life of his daughter, Mary Bray, did not fail because of the fact that she was neither married nor in contemplation of marriage at the time of the execution of the will, because, in the first place, active duties were imposed upon the trustees, which necessitated their retention of the legal estate during the term specified for the existence of the trust, and, in the second place, the purpose of the trust was to withhold from the daughter the control of the corpus of her share of the estate, and to preserve it for the sake of future interests: Shankland's Appeal, 47 Pa. 113; Wickham v. Berry, 55 Pa. 70; Rife v. Geyer, 59 Pa. 393; Deibert's Appeal, 78 Pa. 296; Little v. Wilcox, 119 Pa. 439; Watson's Appeal, 125 Pa. 340; McIntosh's Appeal, 158 Pa. 528; Eshleman's Estate, 191 Pa. 68; Girard Life Ins. & Trust Co. v. Chambers, 46 Pa. 485; Earp's App., 75 Pa. 119; Williams's Appeals, 83 Pa. 377; Addams's Est., 3 Leg. Gaz. 42; Bacon's App., 57 Pa. 504; Craige v. Craige, 9 Phila. 545; Eley's App., 103 Pa. 300; Livezey's App., 106 Pa. 201; Wolfinger v. Fell, 195 Pa. 12; Scott v. Bryan, 194 Pa. 41; Fidelity Ins. Trust & Safe Deposit Co.'s App., 5 W. N. C. 513; Keene's Estate, 81 Pa. 133; Osborne v. Soley, 81* Pa. 312; Eachus's Appeal, 91 Pa. 105; Stambaugh's Estate, 135 Pa. 585; Barnett's Appeal, 46 Pa. 392; Sims's Estate, 130 Pa. 451; Kern's Estate, 5 Pa. Dist. Rep. 264; Hemphill's Estate, 180 Pa. 95, affirming 5 Pa. Dist. Rep. 690; Ingersoll's Appeal, 86 Pa. 240, reversing 2 W. N. C. 13; Moss's Estate, 39 Legal Int. (Pa.) 42; Boies's Estate, 177 Pa. 190; Kelly's Estate, 193 Pa. 45, reversing 8 Pa. Dist. Rep. 51; Andrews v. Boyd, 5 Me. 199; Thompson's Appeal, 100 Pa. 478; Crosby v. Davis, 2 Clark (Pa.) 403; Ashhurst's Appeal, 77 Pa. 464; Dunn & Biddle's Appeal, 85 Pa. 94; Lynn v. Downes, 1 Yeates (Pa.), 518; Barker's Appeal, 72 Pa. 421; Leech v. Robinson, 74 Pa. 273; Middleswarth v. Blackmore, 74 Pa. 414; Sheetz's Appeal, 82 Pa. 213; Mickley's Estate, 4 Pa. Superior Ct. 550; Florance's Estate, 8 Pa. Rep. Dist. 209.

Even if the trust created by the will of Daniel Bray would otnerwise have been executed, the provision that the income should be paid to the cestui que trust for her use, support and maintenance, and that her receipt should be the only discharge therefor, rendered it a spendthrift trust, and it was consequently active: Vaux v. Parke, 7 W. & S. 19; Ashhurst's App., 77 Pa. 464; Seitzinger's Est., 170 Pa. 500; Dunn & Biddle's App., 85 Pa. 94; Scott v. Bryan, 194 Pa. 41; Overman's Appeal, 88 Pa. 276; Thackara v. Mintzer, 100 Pa. 151; Smith v. Savidge, 4 Penny. 320; Forney's Estate, 161 Pa. 209; Winthrop Co. v. Clinton, 196 Pa. 472, reversing 9 Pa. Dist. Rep. 19; Mannerback's Estate, 133 Pa. 342; Schell's Estate, 15 Pa. C. C. 372.

If there were any doubt as to whether the provision made by Daniel Bray for his daughter was an active trust for life, or a separate use trust invalid because not made in contemplation of marriage, that doubt should now be resolved in favor of the former interpretation by reason of the fact that such a construction has been given it by the parties concerned for over fifty years: Topliff v. Topliff, 122 U. S. 121; Johnson v. Gibson, 78 Ind. 282; Reissner v. Oxley, 80 Ind. 580; Lyles v. Lescher, 108 Ind. 382; Stuart v. Laird, 1 Cranch (U. S.), 299; Cohens v. Virginia, 6 Wheat. (U. S.), 264; Graham's App., 1 Dall. (Pa.), 136; Kirk v. Dean, 2 Binn. (Pa.) 341; McFerran v. Powers, 1 S. & R. (Pa.) 102; Goddard v. Gloninger, 5 Watts (Pa.), 209; Phila. & Erie R. R. Co. v. Catawissa R. R. Co., 53 Pa. 20; Commonwealth v. Grant, 2 Woodw. (Pa.) 379; Penna. R. R. Co. v. Pittsburg, 104 Pa. 522.

The trust created for Mary Bray by the will of her father being an active continuing trust, under which she took only an equitable life estate with power of appointment, the appointments of that estate which she attempted to make by her will were in violation of the rule against perpetuities, except with regard to the provisions made for her son, William Stokes Boyd, Jr., and consequently, after the expiration of the life estate given to him, the estate passed to the heirs of Mary Bray, under the will of her father: Smith's App., 88 Pa. 492; Lawrence's Est., 136 Pa. 354; Collins v. Stork, 40 Legal Int. 200; Grosvenor v. Bowen, 15 R. I. 549; Hillyard v. Miller, 10 Pa. 326; Davenport v. Harris, 3 Grant (Pa.), 164; Coggins's

App., 124 Pa. 10 ; Johnston's Est., 185 Pa. 179 ; Gerber's Est., 196 Pa. 366 ; 1 Sugden on Powers (3d Am. ed.), 178 ; Fearne on Remainders, 373 ; Stump v. Findlay, 2 Rawle (Pa.), 168 ; Buzby's Appeal, 61 Pa. 111 ; Koppenhaffer's App., 87 Pa. 196 ; Woelpper's App., 126 Pa. 562 ; Stewart v. Neely, 139 Pa. 309 ; Fife v. Miller, 165 Pa. 612 ; Eshleman's Est., 191 Pa. 68 ; Thomas v. Gregg, 76 Md. 169 ; Smith's App., 88 Pa. 492 ; Company of Pewterers v. Christ Hospital, 1 Vern. 161 ; Atty. Gen. v. Gill, 2 P. Wms. 369 ; In re Application of Mayor, etc., of New York, 55 Hun (N. Y.), 204 ; 119 N. Y. 660 ; Smith v. Townsend, 32 Pa. 434 ; Franklin's Est., 27 W. N. C. (Pa.) 545 ; Smith v. Lord Camelford, 2 Ves. Jr. 698 ; Rhodes v. Shaw (N. J.), 11 Atl. Repr. 116 ; Sandford v. Blake, 45 N. J. Eq. 247 ; Wollaston v. King, L. R. 8 Eq. 165 ; Webb v. Sadler, L. R. 14 Eq. 533 ; Morgan v. Gronow, L. R. 16 Eq. 1 ; Ward's Estate, 8 Pa. Dist. Rep. 701.

*Richard C. Dale*, for John M. Gest, executor of William Stokes Boyd, appellee.—William Stokes Boyd, husband of Mary Bray Boyd, was one of her heirs : Gibbons v. Fairlamb, 26 Pa. 217 ; Eby's Appeal, 84 Pa. 241 ; Ashton's Estate, 134 Pa. 390 ; Comly's Estate, 136 Pa. 153.

PER CURIAM, May 27, 1901 :
The decree entered by the court below is affirmed on the opinion of Judge PENROSE.
Decree affirmed and appeal dismissed at the cost of the appellants.

---

## Boyd's Estate (No. 2).

Argued April 3, 1901.  Appeal, No. 122, Jan. T., 1901, by Mary Bray Boyd, Executrix of William Bray Boyd, deceased, from decree of O. C. Oct. T., 1885, No. 37, sustaining exceptions to adjudication in the Estate of Mary Bray Boyd, deceased.  Before McCOLLUM, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.