## LEGG'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4649.

Circuit Court of Appeals, Fourth Circuit.

Sept. 21, 1940.

---

Robert D. Bartlett and Edgar Allan Poe, both of Baltimore, Md., for petitioner.

Berryman Green, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before PARKER and SOPER, Circuit Judges, and H. H. WATKINS, District Judge.

PARKER, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals, assessing deficiency estate taxes in the sum of $33,027.20 with respect to property held to have passed under a general power of appointment, exercised by the will of one Mildred Sheppard Legg. Three contentions are made by petitioner: (1) that the power of appointment was not general but special; (2) that its exercise by the donee, with respect to a remainder interest covered, was void as contravening the rule against perpetuities; and (3) that, with respect to the life estate taken by the daughter of the donee of the power, this did not pass under the power, but under the will of the donor.

The donor of the power was one A. Maxwell Sheppard, a citizen of Pennsylvania, who died domiciled in that state on March 26, 1924. Mildred Sheppard Legg was one of his three daughters. Provisions of his will, so far as material hereto, place a portion of his estate in trust to pay the income to his wife for life and thereafter in equal portions to his daughters for life. His will gave the daughters the power by will "to give, devise and bequeath the principal which supported their respective shares of the income of my estate, unto such person or persons, and upon such terms and conditions as they

shall respectively limit, appoint and direct to receive the same". In default of such appointment, the will provided that "the principal of the share" of the child failing to exercise the power of appointment should go to "her lawful issue absolutely in fee." The will contained the following provision: "I direct that the payments to be made to my wife and children under the provisions of my will shall be without any power of anticipation or assignment by them or either of them and free and discharged from any claim or liability for any debt, contract or engagement which they or any of them may now owe, or may hereafter contract, and from all judgments, levies or executions thereon which may be issued against them or any of them."

Mildred Sheppard Legg, who was a resident of Maryland, died in the year 1934, survived by her husband and one child, Mildred Webster Legg, who was born in the year 1923 prior to the death of the original donor, A. Maxwell Sheppard. Mrs. Legg left a will in which she set forth that she was exercising the power of appointment vested in her by the will of her father. She placed in trust the share of his estate allotted to her, with direction that the corpus be divided into a one-third and a two-thirds portion; that the net income from the one-third portion be paid to her husband for life; that the two-thirds portion be divided into as many equal parts as the number of her children and one such part held for each child and the income therefrom used for or paid to such child for life; that, upon the death of her husband, the one-third set apart for him for life be added to the shares of the children; that, if any child should die without issue, his share should be added to the others; and that, if any child should die leaving children surviving, the income of that child's part should be paid equally to the children until the youngest of them should arrive at the age of twenty-one years, at which time the corpus of that part should be divided equally among them.

The contentions of petitioner, stated with reference to these facts, are: (1) that the power of appointment is a special power and not a general power subject to the estate tax, for the reason that the spendthrift trust provisions, quoted above, forbid appointment to the creditors of the donee of the power; (2) that the will of the donee, to the extent of remainder interest given her children's children, is violative of the rule against perpetuities because of the possibility that she might have had children born to her after the death of her father, the original donor, the argument being that the exercise of the power speaks as of the time of the death of the donor, and that, when so considered, the provisions of the exercise of the power are not limited to a life or lives in being and twenty-one years; (3) that to the extent of the value of the life estate of Mildred Webster Legg, daughter of the donee of the power, nothing passed under the appointment, since the entire property was vested in her, subject to the power of appointment, by the will of the donor, and the exercise of the power merely reduced the estate previously vested.

The questions raised by the foregoing contentions, i. e., questions as to the nature of the power of appointment and as to the property passing by the exercise of the power, must be answered by applying the law of Pennsylvania, as that is the state of the domicile of the donor of the power and the state wherein the property subject to its exercise is situate. The rule is that, with respect to personalty, the validity and sufficiency of the execution of a power created by will are to be determined generally by the law of the domicile of the donor of the power, and, with respect to realty, by the law of the place where the realty is situate. A.L.I. Restatement of Conflict of Laws, Secs. 234, 284, 285, 287; 49 C.J. 1298; Pearce v. Lederer, D.C., 262 F. 993, 996, affirmed, 3 Cir., 266 F. 497. And the application of this rule is not affected by the fact that a question of federal taxation is ultimately involved; for while we look to federal decisions as authoritative in interpreting the federal statute imposing the tax, we look to the law of the state as laid down by its courts in determining whether there has been such a transfer of property as is subject to the tax under that interpretation. "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." Morgan v. Commissioner, 309 U.S. 78, 626, 60 S.Ct. 424, 426, 84 L.Ed. 585; Leser v. Burnet, 4 Cir., 46 F.2d 756; Dayton & Michigan R. Co. v. Commissioner, 4 Cir., 112 F.2d 627, 630.

On the first question, we think that the Board was correct in holding that, under the law of Pennsylvania, the power

of appointment was a general and not a special power. The limitations imposed upon the wife and children of the donor by the spendthrift trust clause above quoted, had relation merely to the payments to be made them during their lives from the income of the trust. Nothing therein contained limited the general power to appoint to creditors at death; and the law seems to be perfectly well settled in Pennsylvania that a general power of appointment is not converted into a special power by reason of spendthrift provisions protecting the income during the lifetime of the donee. In re Miller's Trust, 313 Pa. 18, 169 A. 362; In re Wilbur's Estate, 334 Pa. 45, 5 A.2d 325, 330.

■■■ On the second question, involving the rule against perpetuities, the point of petitioner is that the instrument exercising the power of appointment must be read as though it were a part of the instrument creating the power; that possibilities and not actual conditions must be considered in determining whether it violates the rule against perpetuities; and that, when the will of the donee here is read as a part of the will of the donor, there is a possibility of the appointment's embracing lives not in being, since the appointment was to the children of the donee and there was a possibility at the time of the death of the donor that the donee might have children other than Mildred Webster Legg. It is true that the instrument exercising the power of appointment must be read as though a part of the instrument creating the power; but in such case there is an exception to the general rule that possibilities and not actual conditions must be considered in determining whether the rule against perpetuities is violated. "The determination of the validity of the appointment in such cases depends upon the facts as they actually exist at the time the appointment is made and not possibilities". In re Warren's Estate, 320 Pa. 112, 182 A. 396, 397, 104 A.L.R. 1345; In re Boyd's Estate, 199 Pa. 487, 49 A. 297. As Mildred Webster Legg, the only child of the donee who could take under the power of appointment, was living at the time of the death of the donor of the power, there can be no question as to the validity of the appointment under this rule. The remainder over after her death was to take effect eo instante upon the termination of her estate and would vest, therefore, within twenty-one years of the termi-

nation of a life in being at the time of the creation of the power. In re Lawrence's Estate, 136 Pa. 354, 20 A. 521, 11 L.R.A. 85, 20 Am.St.Rep. 925.

■■ Petitioner relies upon Smith's Appeal, 88 Pa. 492, and Cox v. Dickson, 256 Pa. 510, 100 A. 947; but, as pointed out in the Warren case, the Smith case has been overruled and the case of Cox v. Dickson is clearly distinguishable. Petitioner argues that the Warren case was not decided until 1936 and cannot be taken as evidence of what the law in Pennsylvania was in 1934. As we interpret the Pennsylvania decisions, the Smith case had ceased to be regarded as law in that state long prior to 1934, but this is immaterial. Decisions are mere evidences of the law, not the law itself; and an overruling decision is not a change of law but a mere correction of an erroneous interpretation. We accept this latest expression of the courts of Pennsylvania in the Warren case, therefore, not as a change in the law, but as the correct expression of the common law then and theretofore prevailing in that state. Incidentally it is in harmony with the common-law rule as followed elsewhere. See notes 104 A.L.R. 1352, 1353; 1 A.L.R. 375.

■■ The third question was not raised before the Board, but is raised here because of the decision of the Circuit Court of Appeals of the Third Circuit in Rothensies v. Fidelity-Philadelphia Trust Co. et al., 3 Cir., 112 F.2d 758, decided April 23, 1940, after the decision of the Board and the filing of the petition for review herein. That case is "on all fours" with the case at bar and in the light of the opinion therein, which fully and adequately discusses the legal questions involved, and in which we concur, we think there can be no question but that, to the extent of the value of the life estate of Mildred Webster Legg, there was error with respect to the property passing under the power of appointment. As heretofore stated, the will of the donor of the power provided that Mildred Webster Legg, in default of the exercise of the power, should have the entire share of her mother, the donee of the power, in fee simple absolute. She was thus vested, under the law of Pennsylvania, with a fee-simple estate in remainder in this property subject to be divested by the exercise of the power by her mother, the donee. In re Freeman's Estate No. 1, 35 Pa.Super. 185, approved 280 Pa. 273, 124

A. 435, 281 Pa. 190, 126 A. 270, 282 Pa. 206, 127 A. 838; In re Potter's Estate, 13 Pa. Dist. & Co. R. 667. When the power was exercised by the donee, the result was, not that property passed thereby to Mildred Webster Legg, but that the estate which had previously vested in her was cut down from a fee-simple interest in the whole to an equitable life estate in a part. What was taken away from her by the exercise of the power passed under the power, but not what was left. That had already vested in her under the will of her grandfather, the original donor. As said by Judge Jones, speaking for the Circuit Court of Appeals in the Rothensies case, supra [112 F.2d 763]: "What therefore, of the devise over in default of appointment, remains undivested after the donee's exercise of the power passes under the will of the donor. As the whole includes all of its parts so does a fee embrace all of the estates that may be carved therefrom. Consequently, the effect of Mrs. Hopper's appointment to her children of an undivided one-fifth interest to each in the equitable estate in the property for life instead of an undivided one-fourth to each in the legal estate in fee, which they would have enjoyed had the power not been exercised, was merely to limit and thus reduce the extent of her children's already vested estates under the will of their grandfather and from whose will they derived their title."

It will be observed that the decision in the Rothensies case is grounded upon the decision of the Supreme Court in the case of Helvering v. Grinnell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825, which expressly disapproved the decision of the Third Circuit in Wear v. Commissioner, 3 Cir., 65 F.2d 665. Were it not for this, we would be inclined to the view, stated in the Wear case, that the extinguishment of the possibility of defeasance with respect to the property appointed to the one designated to take in default of appointment was a sufficient passing of property to come within the purview of the taxing statute. Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758. Such view cannot now be taken, however, in the light of the Supreme Court's express disapproval of the Wear case and its express statement that the principle of the Tyler case has no application in view of the provisions of the statute here under consideration. Likewise the disapproval of

the Wear case disposes of the contention that the Grinnell case should be distinguished on the ground that it involved a rejection of the exercise of the power by the appointee. No such rejection was involved in the Wear case; nevertheless the Supreme Court said in the Grinnell case: "We granted the writ of certiorari in this case * * * because of an alleged conflict with Wear v. Com'r [3 Cir.], 65 F.2d 665, and Lee v. Com'r, 61 App. D.C. 33, 57 F.2d 399. The reasoning and conclusions of those courts and of the court below cannot be reconciled. We are of opinion that, to the extent of the conflict, the view of the former is wrong and that of the court below is right, and we hold accordingly." [294 U.S. 153, 55 S. Ct. 356, 79 L.Ed. 825.] As said by Judge Jones in the Rothensies case, supra: "If the appointees' rejection of the donee's bequest was of controlling importance to the decision in the Grinnell case, as the Collector argues, then the conclusions of the Circuit Courts of Appeals in the Wear and Lee cases, where the appointees did not reject, could have been reconciled with the conclusion of the Circuit Court of Appeals in the Grinnell case, where the appointees did reject; and the fact that the Supreme Court found the respective conclusions to be irreconcilable clearly implies that the question as to the incidence of the appointees' title depended for its solution upon the effect of the donor's and donee's wills under local law rather than upon the voluntary act of the appointees in receiving the property".

It is argued that, since the disposition made under the power of appointment is different from what was provided for otherwise, the entire property subject to the power must be treated as passing thereunder. Apparent support for this position is found in certain cases decided under the law of New York. In re Warren's Estate, 62 Misc. 444, 116 N.Y.S. 1034 and cases there cited. The support, however, is only apparent. The New York Law of 1897, c. 284, taxes the exercise of the power as a transfer (In re Dows' Estate, 167 N.Y. 227, 60 N.E. 439, 52 L.R.A. 433, 88 Am.St.Rep. 508); and where resort must be had to the will of the donee, as in the case where such will makes a different disposition from what is provided for otherwise, the power has unquestionably been exercised and liability for the tax is established. Even under the law of New

York, where appointees receive less by the exercise of a power of appointment than they would have received under the will of the donor in default of the exercise of the power, they are held to take under the will of the donor and their interest not to be subject to the tax imposed upon the exercise of the power. Re Tuckerman's Estate, 130 Misc. 806, 224 N.Y.S. 604. Under the federal law the tax is imposed with respect to "property *passing* under a general power of appointment". 26 U.S.C.A. Int.Rev.Acts, p. 230. (Italics supplied.) As pointed out above, there was no passing of the life estate of Mildred Webster Legg under the power of appointment. The residue of the estate vested in her by her grandfather's will "passed" as a result of the exercise of that power, but the life estate remained where the will of the grandfather had vested it.

We think it necessarily follows that an excessive tax has been levied upon taxpayer as the result of improperly including the value of the life estate of Mildred Webster Legg in the value of the property passing by exercise of the power of appointment. The question then arises as to whether we have the power to afford relief in view of the fact that petitioner did not raise before the Board the question of law upon which we have reached this conclusion. We think that we have. It is true, of course, that ordinarily we will not reverse on a ground not raised before the Board. Rhodes v. Commissioner, 4 Cir., 111 F.2d 53. This is a salutary rule even where the ground urged for reversal is a pure question of law; for the raising of a question of law in a lower court or before the Board might result in the introduction of additional evidence which would cause it to be presented in an entirely different light from that presented by the record as made. A change of legal position between courts has little to commend it, and should not ordinarily be allowed. We must never forget, however, that we sit as a court to see that justice is done; and we should not permit such a manifest injustice as the collection of a tax which is not legally owing upon the admitted facts in the record before us, merely because counsel failed to raise before the Board a point of law determinative of the matter. Particularly is this true where, as here, the point is one which counsel may well have overlooked, and which was called to their attention only after the Board's decision. The decision of the Third Circuit in the Rothensies case overruling the decision in the Wear case presented a changed situation with respect to the law, and justifies our treating the case before us as an "exceptional case", justifying departure from the general rule that we will not reverse on a ground not raised before the Board. Helvering v. Hormel, 8 Cir., 111 F.2d 1. The rule that we will not reverse on grounds not raised before the Board is analogous to that applied in appeals from a District Court. That rule, however, is subject to the well-settled exception that, in exceptional cases and to prevent a miscarriage of justice, we will exercise the power to notice plain error not assigned or even excepted to.

In Clarksburg Trust Co. v. Commercial Casualty Ins. Co., 4 Cir., 40 F.2d 626, 634, this court had before it a case instituted to recover on a bond, in which verdict had been directed for the defendant. On an examination of the record, we were of opinion that verdict had been properly directed upon the bond as executed, but that the case should have been transferred to the equity side of the docket to the end that apparent mistake in the bond might be corrected. Although no motion had been made in the court below to transfer the case to the equity docket and no exception had been taken based upon the right to have the case heard in equity, we remanded the cause in order that the proper principles might be applied, saying: "It is further objected that defendant did not in the court below move to transfer the case to the equity docket or reserve any exception based upon the right to have the case heard in equity. This is true; and, of course, the ordinary rule is that for points to be passed on here they must have been reserved in the lower court. We are required, however, by the Act of February 26, 1919 (28 U.S.C.A. § 391), on the hearing of an appeal, to give judgment 'after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties.' There is no doubt, as stated above, that we have the power in this court, of our own motion, to transfer a cause from law to equity or vice versa, where we find that it has been wrongly instituted; and, while we will not ordinarily do so unless the point is properly raised in the court below, we will not hesitate to exercise the power when otherwise a fail-

ure of justice may result. Courts exist to do justice; and it would be a reproach to any legal system to deny to a litigant relief, to which upon his pleadings and proofs, he is entitled, merely because his counsel have come in by the wrong door of the court."

We are given power by statute, 26 U.S.C.A. Int.Rev.Code § 1141(c), "to affirm or, if the decision of the Board is not in accordance with law, to modify or to reverse the decision of the Board, with or without remanding the case for a rehearing, as justice may require." This is a broad power; and, if we are of opinion that the decision of the Board is not in accordance with law, we see no reason why we may not reverse its decision as justice may require, even on a point not raised before it. Just as we are emerging from the technicalities that formerly beset practice in courts of law and equity, it would be most unfortunate if we should develop a new system of technicalities to thwart and hamper the administration of justice in the ever increasing number of cases which come to us from administrative boards. To such cases the salutary rule should be applied that we will not reverse ordinarily on grounds not raised before the Board; but, just as in appeals coming to us from the District Courts, we should not hesitate to recognize the power and duty to notice error to which the attention of the Board has not been called, where in exceptional cases this is necessary to prevent a miscarriage of justice.

In accordance with this concept of our duty, we reversed an order of the Board and remanded the case for further proceedings in Underwood v. Commissioner, 4 Cir., 56 F.2d 67, 73, where it appeared that the Board had failed to allow taxpayer a deduction for expenses, although, because of the theory on which the case had been tried, no evidence with regard thereto had been offered by taxpayer. We said in that case: "This action, we think, is authorized by the powers vested in this court by the Revenue Act of 1926, § 1003, 44 Stat. 110, 26 U.S.C. 1226 (26 U.S.C.A. § 1226 [26 U.S.C.A.Int. Rev.Acts, page 313]), where it is provided that the Circuit Court of Appeals shall have power to modify or reverse a decision of the Board, if not in accordance with the law, with or without remanding the case for a rehearing, as justice may require. In a number of instances, Circuit Courts of Appeals have remanded cases for rehearing when it seemed necessary in order to do justice to the parties. It does not appear in these cases that new evidence was available; but in the instant case the evidence is known to exist and it would be an abuse of discretion to decline to receive it. See Cohan v. Commissioner [2 Cir.] 39 F.(2d) 540, 543; Citrus Soap Co. v. Lucas [9 Cir.] 42 F.(2d) 372, 373; Isbell Porter v. Commissioner [2 Cir.] 40 F.(2d) 432; Independent Ice & Cold Storage Co. v. Commissioner [5 Cir.] 50 F.(2d) 31; Russell v. Commissioner [1 Cir.] 45 F.(2d) 100. In addition, there is the well-established rule that an appellate court has the power, without determining and disposing of a case, to remand it to the lower court for further proceedings if the case has been tried on a wrong theory, or the record is not in condition for the appellate court to decide the question presented with justice to all parties concerned. See Finefrock v. Kenova Mine Car Co. [4 Cir.] 22 F.(2d) 627, 634, and cases cited; also Seufert Bros. Co. v. Lucas [9 Cir.] 44 F.(2d) 528."

See, also, Helvering v. Rankin, 295 U.S. 123, 131–133, 55 S.Ct. 732, 79 L.Ed. 1343; Chatham Phenix Nat. Bank v. Helvering, 66 App.D.C. 330, 87 F.2d 547, 550; Wilson Coal Land Co. v. Commissioner, 4 Cir., 87 F.2d 185, 189; Helvering v. Edison Securities Corp., 4 Cir., 78 F.2d 85, 91; Edwards v. Holland Banking Co., 8 Cir., 75 F.2d 713, 715; Hamilton Gas Co. v. Watters, 4 Cir., 75 F.2d 176, 182; Manchester Board & Paper Co. v. Commissioner, 4 Cir., 74 F.2d 838, 840; Roosevelt v. Missouri State Life Ins. Co., 8 Cir., 70 F.2d 939, 944; Taylor v. Commissioner, 2 Cir., 70 F.2d 619, 621; Eau Claire Book & Stationery Co. v. Commissioner, 7 Cir., 65 F.2d 125, 126.

The decision of the Board will be reversed and the cause will be remanded to it, to the end that it may consider any additional evidence that may be offered by the parties and may take further proceedings not inconsistent herewith for the determination of the tax due by the taxpayer.

Reversed.