*Decision will be entered under Rule 50.*

THE ESTATE OF EDITH WILSON PAUL, DECEASED, DAVID HUNT PAUL, ADMINISTRATOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19861. Promulgated April 12, 1951.

*Donald E. Hogeland, Esq.*, for the petitioner.
*John A. Newton, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* At the hearing, counsel for petitioner conceded that respondent did not err in including the value of the life estate of the decedent's five children in decedent's gross estate for purposes of determining the estate tax. Thus, the only remaining error assigned is the inclusion of the value of the remainder interests limited in favor of the issue of these five children. Petitioner contends that the provision in which decedent attempted to appoint remainder interests in favor of the issue of the five children born after the death of the donor was void because it violated the Pennsylvania rule against perpetuities and that, therefore, the power to appoint these remainder interests was not "exercised" within the meaning of section 403 (d) (3) of the Revenue Act of 1942.

The respondent contends that the petitioner has not established that the remainders to the issue of the five children born after the death of the donor are void under the Pennsylvania rule against perpetuities. In support of this contention, he argues that the determination of the Orphans' Court of Philadelphia County declaring the remainders void should not be given weight because the decree was rendered in a non-adversary proceeding. It would appear that the proceeding was non-adversary and, in such circumstances, it has been held that the decree rendered therein is not binding upon us. *Tatem Wofford,* 5 T. C. 1152; *Estate of Mary Clare Milner,* 6 T. C. 874. But be that as it may, after a review of the law of Pennsylvania it is our considered opinion that the local court's determination that the rule against perpetuities was violated and the remainders were, therefore, void was a correct interpretation of the then existent law of Pennsylvania.

Respondent does not deny that the issue must be resolved by applying the law of Pennsylvania. The donor was a domiciliary of Pennsylvania and the appointive estate consisted of personalty. Restatement, Conflict of Laws (1934), sec. 284, 49 C. J. 1298. *Legg's Estate* v. *Commissioner,* 114 F. 2d 760.

In Pennsylvania, like most other states, the permissible period for the rule against perpetuities is the same as that evolved at common

law, i. e., a life or lives in being and 21 years, allowing for the period of gestation. *In re Warren's Estate,* 320 Pa. 112, 182 A. 396; *Estate of Gertrude Bucknell Day,* 44 B. T. A. 524. Any limitation or condition which may possibly take away or suspend the absolute power of alienation beyond the permissible period is void.[1] *In re Lilley's Estate,* 272 Pa. 143, 116 A. 392; *In re Wright's Estate,* 348 Pa. 76, 34 A. 2d 57. Although the decisions in the various jurisdictions are not all in harmony, the Pennsylvania courts appear to follow the rule that in the case of a general testamentary power of appointment the remoteness of the appointed estate is measured from the time of the creation of the power. Gray, The Rule Against Perpetuities (4th. ed.), secs. 526, 526.1, 526.2, 963; *Lawrence's Estate,* 136 Pa. 354, 20 A. 521. Furthermore, it is the fact, not the possibility, that rules, i. e., if the appointment as actually made does not violate the rule, such appointment is not rendered void merely because the donee might have appointed in a manner too remote. *In re Warren's Estate, supra; Estate of Gertrude Bucknell Day, supra.* In addition, the determination of the validity of the appointment depends upon the facts as they actually exist at the time the appointment is made, and not possibilities. *In re Warren's Estate, supra; Estate of Gertrude Bucknell Day, supra;* 41 Am. Jur., Perpetuities and Restraints on Alienation, sec. 37.

Respondent argues that under the facts as stipulated and found in this case, it cannot be established that the remainders to the issue of the five children born after the death of the donor are void, because some or all of them may have had issue born prior to the death of decedent and, if so, the remainders to these issue would have vested at the time of the decedent's death which occurred within the permissible period.

It is true that issue born prior to the death of the decedent would become vested with a remainder interest immediately upon the death of the decedent and respondent correctly argues that, therefore, their remainder interest would have "vested" within the permissible period. However, respondent is in error when he concludes that for this reason the rule against perpetuities would not have been violated. The remainder interest that vests in such issue at the death of decedent is not vested to a degree sufficient to satisfy the rule against perpetuities. *In re Lockhart's Estate,* 306 Pa. 394, 159 A. 874; *In re Boyd's Estate,* 199 Pa. 487, 49 A. 297; Restatement of Property (1944) Vol. 4, sec. 371; Simes, Law of Future Interests, 1936, sec. 537; 41 Am. Jur., *supra,* sec. 52. See also *Appeal of Mifflin,* 121 Pa. 205, 15 A. 525. Such a remainder interest is not indefeasibly vested, or even vested subject

---

[1] A recently enacted Pennsylvania statute altered the common law rule to the extent that the permissible period is measured by actual rather than possible events. This statutory change applies only to conveyances effective on or after January 1, 1948. The Estates Act of 1947 (20 P. S. sec. 301.4 (b) and sec. 301.21).

to complete defeasance. Instead, it is merely vested subject to open. Restatement of Property (1936) Vol. 2, sec. 157. These remainder interests were limited to eight different classes, i. e., the issue of the eight children. Upon the death of the decedent in the case of issue born prior thereto or at birth in the case of issue born after the decedent's death, an estate in remainder vested in that issue but this estate was subject to open and let in other members of the class. That is, as other issue were born to that parent they too would share in the estate. *Wetherill's Estate*, 214 Pa. 150; Restatement of Property (1936) Vol. 2, sec. 157. As explained in *Wetherill's Estate, supra,* at p. 153, "where an estate is given to a life tenant, with remainder to the children of the life tenant, the estate vests at once upon the birth of each child, subject to open and let in after-born children * * *."

The remainder interest limited to any of the classes in the instant case will continue to possess this insufficient degree of vestedness until the capacity of that class to increase its membership is ended, that is, until the parent in question dies, for until that event the parent may continue to have issue who would share in the estate. In the case of the five children born after the death of the donor it is possible that this event will not occur before the termination of the permissible period of the rule against perpetuities. The decedent or any of the three children born during the lifetime of the donor may be selected as the measuring life for purposes of measuring the permissible period. *In re Friday's Estate*, 313 Pa. 328, 170 A. 123, 41 Am. Jur., Perpetuities and Restraints on Alienation, sec. 14. But regardless of which of such lives we choose, the possibility remains that the death of one or all of the five children born after the death of the donor may not occur until a time later than 21 years after termination of such life. And since the rule against perpetuities requires that the capacity of each of these classes to increase shall be certain to end by the end of the permissible period, and invalidates the entire limitation of the remainder to such a class if this requirement is not met (*In re Lockhart's Estate*, 306 Pa. 394, 159 A. 874; *In re Boyd's Estate*, 199 Pa. 487, 49 A. 297; Restatement of Property (1936) Vol. 4, sec. 371; Simes, Law of Future Interests, 1936, sec. 537; 41 Am. Jur., *supra*, sec. 52; see also *Appeal of Mifflin*, 121 Pa. 205, 15 A. 525) it follows that the limitation of the remainder in favor of the issue of these five children violated the rule against perpetuities and is void regardless of whether any such issue was born during the lifetime of the decedent.[2]

Respondent further argues that even if these remainder interests were void, the power of appointment over them was nevertheless

---

[2] This common law rule requiring that the capacity of the class to increase must end by the end of the permissible period is now part of the statutory law of Pennsylvania. The Estates Act of 1947 (20 P. S., *supra*).

exercised within the meaning of section 403 (d) (3) of the Revenue Act of 1942. Section 811 (f) of the Internal Revenue Code, as amended by the Revenue Act of 1942, provides for the inclusion in the gross estate of a decedent of the value of any property with respect to which the decedent has at the time of his death the power of appointment. This broad provision is narrowed by section 403 (d) of the Revenue Act of 1942, as amended, which establishes several exceptions to section 811 (f). In section 403 (d) (3)[3] a power of appointment created before the date of the enactment of the Revenue Act of 1942 is excepted from section 811 (f) if the decedent dies before July 1, 1947 (extended by subsequent amendments) and the "power is not exercised."

The requirement relating to critical dates is satisfied by the facts of the instant case. Respondent contends, however, that the exception does not apply because the power was "exercised." He argues that there should be included within the extension of the term "exercised" an appointment which, as here, fails because of a violation of the applicable rule against perpetuities. Respondent would have us hold that an appointment is a valid exercise within the meaning of section 403 (d) (3) regardless of its validity under the applicable local law.

Respondent does not cite and we have not found any authority to support this strained interpretation of the word "exercised" as that word is used in section 403 (d) (3). *Wilson* v. *Kraemer* (D. C. Conn.) July 18, 1950, relied on by respondent, is a decision of the United States District Court involving an appointment valid under the applicable local law. The beneficiaries elected to take under the will of a donor rather than under the appointment of the donee. The holding that the decedent in that case "exercised" the power of appointment is no authority for the interpretation respondent seeks here.

In *Wilson* v. *Kraemer*, *supra*, the appointment of the donee constituted a valid, legally significant act by which the title to property would have passed were it not for the affirmative action of the

---

[3] Regulations 105, section 81.24 (b) (1) and (b) (3):

(1) *In general.*—With the exceptions stated under (2) and (3) hereunder, section 811 (f) of the Internal Revenue Code, as amended by section 403 of the Revenue Act of 1942, requires the inclusion in the gross estate of a decedent who died after October 21, 1942, of the value of all property with respect to which he has at the time of his death any power of appointment exercisable by him, including any power exercisable by him in conjunction with any person. The value of such property is includible in the gross estate whether or not the power is exercised.

\*     \*     \*     \*     \*     \*     \*

(3) *Exceptions applicable to powers of appointment created on or before October 21, 1942.* The amendments made by section 403 of the Revenue Act of 1942 \* \* \* are applicable with respect to powers of appointment created on or before October 21, 1942 \* \* \* except in the case of the following:

\*     \*     \*     \*     \*     \*     \*

(iii) The release, or possession at death without exercise, of any such power of appointment if such release is effected, or the decedent dies, before July 1, 1946.

appointees. Until that affirmative action was taken, the appointment remained a legally effective act. But in the instant case the attempt to appoint was not merely an ineffective act; it was a complete nullity which from its very inception was devoid of legal significance. Furthermore, this act was void not because of a rule of law peculiar to the particular locality but because of a rule of property law firmly established in the common law and followed in numerous common law jurisdictions. 41 Am. Jur., *supra*, sec. 52; Restatement of Property (1944) Vol. 4, sec. 371.

Perhaps, as explained by the court in *Wilson* v. *Kraemer*, *supra*, Congress in drafting the exception in the 1942 amendment did not intend to restrict the meaning of the word "exercise" so as to exclude a valid appointment subsequently rendered ineffective by the refusal of the beneficiary to take under the appointment. Even so, we find no substantial grounds either in the reasoning of the court in *Wilson* v. *Kraemer*, *supra*, or in the legislative history of the Act for concluding that the drafters intended to include a void appointment such as we have here within the meaning of the word "exercise." We do not feel justified in such circumstances in concluding that Congress intended either to make a void act valid for tax purposes or to levy a tax on an estate because of a decedent's mere gesture possessing no legal significance. See *John S. Montgomery, et al., Executors*, 17 B. T. A. 491. On the contrary, such a conclusion would not·be consistent with the report [4] accompanying the 1942 Revenue Act in which the Committee on Ways and Means defined a power of appointment as "an authority to do some act in relation to property which the owner, granting such power, might himself do." Certainly a void appointment that is a legal nullity from its very inception and, therefore, cannot affect a disposition of property is not an exercise of the authority to do some act in relation to property.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[4] H. Rept. No. 2333, 77th Cong., 2d sess., 1942–2 C. B. 372, 417.